## UNITED STATES *v.* STOWELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 167. Submitted December 2, 1889. — Decided January 20, 1890.

Statutes to prevent frauds upon the revenue, although they impose penalties or forfeitures, are not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature.

The forfeiture imposed by the act of February 8, 1875, c. 36, § 16, for carrying on the business of a distiller without having given bond, or with intent to defraud the United States of the tax on the spirits distilled, includes all personal property owned by other persons, knowingly and voluntarily permitted by them to remain on any part of the premises, and actually used, either in the unlawful business, or in any other business openly carried on there; but in the lot of land on which the distillery is situated, only the right, title and interest of the distiller, and of persons who have consented to the carrying on of the business of a distiller thereon, is forfeited. And there is a like forfeiture of personal property under Rev. Stat. § 3258, for setting up an unregistered still; and of personal property and interests in real estate under § 3305, for omitting to keep books as required by law.

The forfeiture imposed by the act of February 8, 1875, c. 36, § 16, and by Rev. Stat. §§ 3258, 3305, takes effect from the time of the commission of the offence, both as to the right, title and interest in the land, and as to personal property then upon the land.

When the owner of land, upon which an illicit distillery has been set up and carried on with his consent, has previously made a mortgage thereof to

one who does not permit or connive at the illicit distilling, and the mortgagor, upon a subsequent breach of condition of the mortgage, makes a quitclaim deed to the mortgagee, the forfeiture of the land, as well as of trade fixtures annexed to it for a lawful purpose before the setting up of the still, is of the equity of redemption only.

THIS was an information, filed November 18, 1884, under §§ 3258 and 3305 of the Revised Statutes, and § 16 of the act of February 8, 1875, c. 36, (the material parts of which are printed in the margin,[1]) for the forfeiture of property particularly described in the information, and seized by the collector of internal revenue on November 14, 1884, and including: 1st. All the right, title and interest of Thomas Dixon; Eli B. Bellows

---

[1] By Rev. Stat. § 3258, "every person having in his possession or custody, or under his control, any still or distilling apparatus set up, shall register the same with the collector of the district in which it is." "Stills and distilling apparatus shall be registered immediately upon their being set up. Every still or distilling apparatus not so registered, together with all personal property in the possession or custody or under the control of such person, and found in the building, or in any yard or inclosure connected with the building in which the same may be set up, shall be forfeited," and he shall be punished by fine and imprisonment.

By the act of February 8, 1875, c. 36, § 16, (substantially reënacting Rev. Stat. § 3281,) any person "who shall carry on the business of a distiller without having given bond as required by law, or who shall engage in or carry on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or any part thereof," shall be fined and imprisoned. "And all distilled spirits or wines, and all stills or other apparatus, fit or intended to be used for the distillation or rectification of spirits, or for the compounding of liquors, owned by such person, wherever found; and all distilled spirits or wines and personal property, found in the distillery or rectifying establishment, or in any building, room, yard or inclosure connected therewith, and used with or constituting a part of the premises; and all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated; and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same;" shall be forfeited to the United States. 18 Stat. 310.

By Rev. Stat. § 3305, every distiller who omits to keep books in the form prescribed by the Commissioner of Internal Revenue shall be punished by fine and imprisonment, and "the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property on said premises used in the business there carried on, shall be forfeited to the United States."

and William Stone in a lot of land in the city of Lawrence, with the buildings thereon. 2d. A copper still, a boiler and engine, a pump, vats and tanks, and other machinery and fixtures. 3d. A number of butts, a quantity of malt and hops, two horses and wagons and harnesses, and other personal property.

Joseph Stowell filed a claim for the real estate, the machinery and fixtures, (except the still,) the butts, and the malt and hops; and Thomas Bevington filed a claim for the horses, wagons and harnesses.

A decree was entered against the property not claimed; and upon a trial in the District Court between the United States and the claimants the only evidence introduced was an agreement in writing, signed by the counsel of all the parties, that certain facts were true, which was, in substance, as follows:

For some time before and until the seizure, Dixon carried on the business of a brewer on the premises, which consisted of a three-story frame building and adjoining sheds with doors between, and a yard connected therewith. The requirements of the internal revenue laws concerning breweries were complied with. In the latter part of September, 1884, Stone and Bellows, with Dixon's knowledge and consent, set up in the third story of the principal building (which story was not used in the brewing business, except as the large tanks used in brewing reached up into it) a copper still, which remained in position and in proper condition for use until November 9, 1884, and with which, during that time, two hogsheads and one barrel of rum were made from molasses. The still was not registered as required by law; no bond therefor was given; no government book was kept; the still was run with intent to defraud the United States of the tax on the spirits distilled, and the United States were defrauded of that tax. It did not appear that the sheds were in any way used in connection with the distillery. Dixon continued to carry on his business as a brewer while the still was being used, and on November 10 and 11 took down and removed the still.

There were on the premises a large boiler set in brick, a

small engine, a small pump, and large vats and tanks, which the claimants alleged to be real estate, but which the United States asserted to be fixtures. It was admitted that a part or all of them would be trade fixtures as between landlord and tenant; that part or all of them were apparatus used in the brewery, and such as might properly be in the brewery; and that part or all of them were used as apparatus for the illicit distilling, and were fit to be used in connection with the still.

At the times of the illicit distilling and of the seizure, all these fixtures and the still, as well as all the personal property seized, were in Dixon's possession and custody and under his control, and they were found in the brewery, sheds and yard. Neither of the claimants knew until after the seizure that a still had been set up on the premises.

On June 11, 1883, Dixon conveyed the real estate to Stowell by a mortgage deed, duly recorded, subject to a prior mortgage of $1500, to secure a debt of $2500. On October 13, 1884, upon a breach of condition of this mortgage, Stowell, instead of foreclosing it, took from Dixon a quitclaim deed of the premises, the consideration named in which was $8000.

On June 5, 1884, Stowell took a bill of sale from Dixon of the butts, as security for endorsing a note for $350, which went to protest, and was paid by him on November 10, 1884. At the time of that bill of sale, the butts were pointed out by Dixon to Stowell as those which he was to have, but they remained in Dixon's possession.

On November 8, 1884, Stowell took a bill of sale of part of the malt and hops, as security for endorsing a note for $100 payable in ten days, and paid that note also after it had been duly protested. No delivery was ever made of the malt and hops. Neither of those bills of sale was ever recorded.

On November 11, 1884, a bill of sale of the horses, wagons and harness was executed and delivered by Dixon to Bevington, as security for a loan of $700, which was never paid. This bill of sale was recorded in the city clerk's office on November 18, 1884. The property so conveyed to Bevington was kept on a farm of Dixon's at North Andover, and was used in the business of the brewery, and seized at the brewery.

At the time of the sale, Dixon pointed it out to Bevington, and said that he delivered it, and Bevington appointed Dixon's son as nominal keeper, but never otherwise took possession of it, and it remained under the control of Dixon, and was used by him.

Upon these facts the District Court ruled that the information could not be maintained against the property claimed by Stowell and Bevington, and adjudged that it be dismissed as to that property. The United States alleged exceptions, and, upon the affirmance by the Circuit Court of the judgment of the District Court, sued out this writ of error.

*Mr. Solicitor General* and *Mr. Alphonso Hart,* Solicitor of Internal Revenue, for the plaintiffs in error, cited: *Dobbins's Distillery* v. *United States,* 96 U. S. 395, 399; *United States* v. *1960 Bags of Coffee,* 8 Cranch, 398, 405; *United States* v. *Brigantine Mars,* 8 Cranch, 417; *Gelston* v. *Hoyt,* 3 Wheat. 246, 311; *Wood* v. *United States,* 16 Pet. 342, 362; *Caldwell* v. *United States,* 8 How. 366; *Thatcher's Distilled Spirits,* 103 U. S. 679; 16 Opinions Attys. Gen. 41; *United States* v. *7 Barrels Distilled Oil,* 6 Blatchford, 174; *United States* v. *56 Barrels Whiskey,* 1 Abbott (U. S.) 93; *S. C.* 4 Int. Rev. Rec. 106; *United States* v. *Whiskey,* 11 Int. Rev. Rec. 109; *United States* v. *100 Barrels Spirits,* 1 Dillon, 49, 57; *S. C.* 12 Int. Rev. Rec. 153; *S. C.* (*sub nom. Henderson's Distilled Spirits*) 14 Wall. 44; *United States* v. *Distillery at Spring Valley,* 11 Blatchford, 255; *United States* v. *76,125 Cigars,* 18 Fed. Rep. 147; *Taylor* v. *United States,* 3 How. 197; *Cliquot's Champagne,* 3 Wall. 114; *United States* v. *All the Distilled Spirits,* 2 Ben. 486.

*Mr. Edgar J. Sherman* and *Mr. Charles U. Bell* for defendants in error.

The only material part of the record is the agreed facts, by which it appears that neither of the claimants knew that an illicit business was carried on in the premises, and that a legal business was ostensibly and actually carried on there.

The court must find that these claimants were innocent, not only of any wrongful intent, but even of negligence or blame of any kind. The question then to be argued is whether the property of a person innocent of any charge or suspicion of crime or negligence is to be forfeited, and he thereby punished, because a third person has committed an offence. To the consideration of this question we invite the attention of the court.

I. Penal laws are to be construed strictly. 1 Bl. Com. 91; *Margate Pier Co.* v. *Hannam,* 3 B. & Ald. 266; *Edwards* v. *Dick,* 4 B. & Ald. 212; *Green* v. *Kemp,* 13 Mass. 515; *S. C.* 7 Am. Dec. 169; *Reed* v. *Davis,* 8 Pick. 513; *Caledonian Railway* v. *North British Railway,* 6 App. Cas. 114, 122; *Walton, Ex parte,* 17 Ch. D. 746; *Jackson* v. *Collins,* 3 Cowen, 89, 96; *People* v. *Utica Ins. Co.,* 15 Johns. 358, 380; *S. C.* 8 Am. Dec. 243. Especially forfeitures are not favored. *Hubbard* v. *Johnstone,* 3 Taunton, 177; *Adams* v. *Bancroft,* 3 Sumner, 384.

II. Forfeiture is a punishment, and therefore, if a man who is wholly innocent can ever be punished for the crime of another, it must require language absolutely unequivocal before the court will so construe a statute. The cases we have cited show how strong the language must be. The language of the law and the intent of the law must clearly coincide in requiring such a construction. All the cases assume that in order to subject property to a forfeiture, the owner must himself have violated the law or must knowingly have suffered the property to go into possession of and control of some other person engaged in the regulated business. That is, if he either himself violates the law or knowing that another is violating the law permits him to have the use of his property in the unlawful business, or even permits him to have the use of his property in a business which is lawful, only if it be lawfully conducted, he may forfeit the property. There must be some degree of blame on the owner of the property; for property has no guilty character except as connected with persons who are chargeable with responsibility or blame. If the owner is absolutely innocent the property cannot be forfeited. The mere accident of its situation cannot give it a

criminal character independent of its owner's fault. *United States* v. *Barrels of Spirits*, 1 Lowell, 239; *Dobbins's Distilled Spirits* v. *United States*, 96 U. S. 395.

III. The general object of the statute is to enforce the payment of a tax on all liquor manufactured. It proposes to accomplish this object by inflicting punishments of fine, imprisonment and forfeiture on all actually guilty of attempting to defraud the government of the tax and by requiring vigilance on the part of all who are in any way concerned in the business and property to prevent and disclose any illegal acts under a penalty of a forfeiture of their goods. The legislature thought that the watchfulness of a man whose property was in danger would be greater than that of any government officer. Therefore every one concerned with an open distillery is bound to see that the law is not violated. If he chooses to leave his property in such a distillery, he does so knowing the risk and ought first to satisfy himself that there is no violation of law.

But if the distillery is a secret one and the owner is in ignorance of its existence and in no fault, what conceivable purpose is served by punishing him by a forfeiture of his property?

IV. If then the construction of the statute claimed by the government is, first, unjust, and, second, in no way within the object or intent of the law, the next question would seem to be whether the words of the statute are so imperative that we are driven to say that Congress intended this unjust and unreasonable thing when they passed the law. We claim on the contrary that it clearly appears that the intention was just and reasonable and that Congress does not deserve the imputation which the government would cast upon them.

V. Examining the whole chapter, Rev. Stat. Title 35, c. 4, in the light of these principles we find the law contemplates (1) open lawful distilleries which are stringently regulated with numerous penalties and forfeitures. §§ 3259, 3260, 3262, 3263, 3264, 3267, 3269, 3271, 3275, 3277, 3279, 3280, 3283, 3284, 3286, 3288, 3303, 3304, 3305.

In all cases arising under these sections knowledge of the

nature of the business at least is either expressly required or is assumed from the very nature of the thing. Thus every such open distillery must have a conspicuous sign stating that it is a distillery. § 3279.

For instance, the elaborate provisions of § 3269 are absurd if applied to an illicit distillery. Of what consequence is it whether the pipes are painted black or red so long as the whole is concealed and secret.

The spirit of the law is farther well indicated by § 3262 which contains elaborate provisions, the sole object of which appears to be to protect the government on one side and on the other to secure all innocent parties from loss. The spirit of that section is that no person is to be subjected to the forfeiture unless he has consented to assume that liability. *United States* v. *Distillery at Spring Valley*, 11 Blatchford, 255, 271.

It is clear then that the statute both by its express provisions and by necessary implication, in the case of open distilleries, imposes no forfeiture except on those who have expressly consented or knowingly exposed their property to the risk of forfeiture.

But there is another class of distilleries against which the law is also aimed; which are illicit distilleries. This falls under §§ 3257 and 3281, which latter section has been superseded by Stat. 1875, c. 36, § 16, 18 Stat. 310. In this latter case the owner of the property may be wholly innocent of any knowledge of the existence of the distillery. The proposition which we desire to maintain is that if he is ignorant of the existence of the distillery, his property cannot be forfeited.

As we have seen in case of lawful distilleries no person's goods are forfeited unless he has knowingly exposed them to forfeiture. There is no reason why any harsher rule should be applied in case of illicit distilleries. *Gregory* v. *United States*, 17 Blatchford, 328.

It is undoubtedly true that the presumption is against any one whose property is found in the illicit distillery, especially if such property is in its nature adapted to use in the illegal business. But it is equally clear that the owner may rebut

this presumption and prove that he was wholly innocent. *United States* v. *One Still*, 5 Blatchford, 403; *S. C.* 5 Int. Rev. Rec. 189. Take the case for instance of stolen property. It is clear that it would be unjust, unreasonable and preposterous that the real owner should forfeit such property by its being found in an illicit distillery. Suppose that a person drives his horse upon premises secretly used as a distillery for some inno- cent and legitimate purpose and while there the distillery and the horse are seized, cannot he claim it?

These illustrations and others of the like class which will suggest themselves prove two points: first, that innocence may be proved, and second, that there are exceptions to the literal meaning of the law. The moment it is admitted that there are such exceptions the matter is settled, for if there is any exception, no one will dispute that our case will fall within it. 2. Opinions Attys. Gen. 428; *The Bello Corrunes*, 6 Wheat. 152; *Peisch* v. *Ware*, 4 Cranch, 347, 362.

VI. It ought to be enough simply to state our position. If a man leaves his property and parts with the control of it for a legal and proper purpose, no act of the tenant, unknown to him, and without his consent, can deprive him of his property.

VII. We understand that the decision in *United States* v. *33 Barrels of Spirits*, 1 Lowell, 239, covers this case; and we cite the words of Judge Lowell: "It is impossible to believe that any such sweeping condemnation is intended to be passed founded upon mere proximity in place upon the goods of all persons, innocent or guilty." It is a rule of law as well as of natural justice that statutes will not be understood to forfeit property except for the fault of the owner, general or special, unless such a construction is unavoidable.

VIII. As the statute has absolutely required the assent of the landlord or lessor to the business of licensed distilling, it would certainly have reserved to him some power to control the property and restrain violations of the law, if it had intended to hold him responsible. If the law is as is claimed by the government the case would stand like this: A man lets his estate for a legal and legitimate business. After a time he learns that the tenant has set up an illicit still. He has no

power to enter the premises and stop him. He can only inform the government officers that they may come and seize the premises; that is, may come and seize his own property. The government construction of this statute says to the landlord: "If you give us any information of the illegal acts of your tenant, you shall be punished by a heavy fine." Our construction says to the landlord: "If you do not as soon as you learn of the crime of your tenant inform the government, you shall be punished." Which construction will carry out the end of the law? Which construction is it probable the legislature had in view?

IX. We claim that any such construction would be unconstitutional. And, we cite the dictum of the court in *United States* v. *Distillery at Spring Valley*, 11 Blatch. 255, 271.

X. But it may be asked why Congress did not more explicitly guard against such a construction as that claimed? The answer is that no Congress for one moment supposed that the government would ever attempt to rob a citizen of his property, when it knew and admitted that he was guilty of no crime. The suggestion made in one case that the remedy for an innocent person is to ask favor of some government officer, is unworthy of the court. If a man has rights a court of justice is the place to maintain them. If he has no rights except by the favor of government officers, it is oppression. But if a person humbled himself to beg, what encouragement has he; when the government with full knowledge of his innocence has instituted and pressed the prosecution. The place for discretion, if any, is in refusing to institute unjust suits.

XI. In the very late case of *United States* v. *16 Barrels Distilled Spirits*, 10 Ben. 484, the court although criticising the case in Lowell admit that the statute must be limited in some way and suggest another plan of escaping from its literal terms by limiting the forfeiture to goods found in the very room where the illegal acts were. This seems to us a very illogical way of avoiding the difficulty. It amounts to this. The court says the forfeiture is too unjust to be allowed in a case of magnitude, but if it is only a small amount of property which is affected, we will overlook the injustice. But even if

this construction was adopted, there would be too small an amount of goods left here to make it worth the government's while to continue this controversy.

XII. There can be no question that the real estate is not liable to forfeiture. A farther question arises as to what is part of the real estate. It is not a question of fixtures but of the division line between real and personal estate. If an article is personal estate, it is not a fixture. If it is a part of the real estate and is severable by a tenant, it is a fixture; but this is allowed only in favor of trade and not in favor of forfeitures and penalties. In a case like that before the court the rule in its utmost strictness as between heir and executor is applicable and all machinery and other articles which are annexed to the realty or which go to make it the manufactory for which it is intended are part of the realty.

Mr. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The property sought to be forfeited consisted of real estate, and of machinery and fixtures and personal property found thereon.

The real estate was a single lot of land, part of which was covered by a building and sheds opening by doors into one another, and the rest of which was a yard connected with the buildings. Dixon owned the premises, and used them for a lawful brewery. Stone and Bellows, with Dixon's knowledge and consent, set up and used a still in the principal building, and there carried on the business of distillers, without the still having been registered, and without giving bond, or keeping books, as required by the internal revenue laws, and with intent to defraud the United States of the tax on the spirits which they distilled.

The omission to register the still was a cause of forfeiture under § 3258 of the Revised Statutes; the carrying on of the business of a distiller, without having given bond, or with intent to defraud the United States of the tax on the spirits distilled, was a cause of forfeiture under § 3281, as reënacted

in § 16 of the act of February 8, 1875, c. 36; and the omission to keep books was a cause of forfeiture under § 3305 of the Revised Statutes. The questions presented are of the extent of the forfeiture.

By the now settled doctrine of this court, (notwithstanding the opposing dictum of Mr. Justice McLean in *United States* v. *Sugar*, 7 Pet. 453, 462, 463,) statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature. *Taylor* v. *United States*, 3 How. 197, 210; *Cliquot's Champagne*, 3 Wall. 114, 145; *United States* v. *Hodson*, 10 Wall. 395, 406; *Smythe* v. *Fiske*, 23 Wall. 374, 380.

It will be convenient, in the first place, to ascertain the construction and effect of the provisions of § 16 of the act of 1875, by which, if any person carries on the business of a distiller, without having given bond, or with intent to defraud the United States of the tax on the spirits distilled by him, he shall be punished by fine and imprisonment, and there shall be forfeited to the United States: 1st. "All distilled spirits or wines, and all stills or other apparatus fit or intended to be used for the distillation of spirits, owned by such person, wherever found." 2d. "All distilled spirits or wines and personal property, found in the distillery, or in any building, room, yard or inclosure connected therewith, and used with or constituting a part of the premises." 3d. "All the right, title and interest of such person in the lot or tract of land on which such distillery is situated." 4th. "All right, title and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same." 18 Stat. 310.

By the first of these provisions, all distilled spirits or wines, and all stills or other apparatus fit or intended to be used for the distillation of spirits, owned by the illicit distiller, and found on the premises or elsewhere, are forfeited, without

regard to the question whether the apparatus, by reason of the manner in which and the purpose for which it is placed on or affixed to the land, is technically personal property or real estate. But this provision does not extend to property owned by any other person than the distiller.

The second provision forfeits " all distilled spirits or wines and personal property, found in the distillery, or in any building, room, yard or inclosure connected therewith, and used with or constituting part of the premises." The last words, " and used with or constituting part of the premises," like the words next preceding, " connected therewith," aptly designate real estate, and naturally and grammatically relate to and qualify " any building, room, yard or inclosure," and not " all distilled spirits or wines and personal property." The provision is clearly not limited to personal property owned by the illicit distiller. To hold it to be so limited would give no effect to that part of this provision which forfeits distilled spirits or wines; for all distilled spirits or wines owned by the distiller, wherever found, have been already forfeited by the first provision. The first provision is restricted in point of ownership, and not in point of place. The second provision is restricted in point of place, and not in point of ownership. Nor can the second provision be restricted to property fit or intended to be used for the distillation of spirits; for, while the first provision contains such a restriction as regards apparatus, the second provision omits all requirement of fitness or intention for the unlawful use. Each of the two provisions clearly defines its own restrictions, and the restrictions inserted in the one cannot be imported into the other. The second provision must therefore extend to some property not owned by the distiller, and to some property not fit or intended to be used in distilling spirits. In order to give it such effect as will show any reason for its insertion in the statute, it must be construed to intend, at least, that all personal property which is knowingly and voluntarily permitted by its owner to remain on any part of the premises, and which is actually used, either in the unlawful business, or in any other business openly carried on upon the premises, shall be forfeited, even if he has no participation in or knowl-

edge of the unlawful acts or intentions of the person carrying on business there; and that persons who entrust their personal property to the custody and control of another at his place of business shall take the risk of its being subject to forfeiture if he conducts, or consents to the conducting of, any business there in violation of the revenue laws, without regard to the question whether the owner of any particular article of such property is proved to have participated in or connived at any violation of those laws. The present case does not require us to go beyond this; or to consider whether the sweeping words "all personal property" must be restricted by implication in any other respect, for instance, as to personal effects having no connection with any business, or as to property stolen or otherwise brought upon the premises without the consent of its owner.

The significance of the omission of all restrictions in point of ownership, and in point of fitness or intention for the unlawful use, in the second provision concerning personal property, is clearly brought out by contrasting that provision with the provisions immediately following it, concerning real estate. The third provision forfeits only " all the right, title or interest of " the distiller " in the lot or tract of land on which the distillery is situated." And the fourth provision forfeits only " all right, title and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same."

Congress has thus clearly manifested its intention that the forfeiture of land and buildings shall not reach beyond the right, title and interest of the distiller, or of such other persons as have consented to the carrying on of the business of a distiller upon the premises.

In the case, on which the attorney for the United States much relied, of *Dobbins's Distillery* v. *United States*, 96 U. S. 395, the jury, under the instructions given them at the trial, had found that the owner of the distillery, whose title was held to be included in the forfeiture for unlawful acts of his lessee, had leased the property for the purpose of a distillery, which brought the case within the provision of the act under

which the condemnation was sought, corresponding to the fourth provision now under consideration. Act of July 20, 1868, c. 186, § 44; 15 Stat. 143.

The intention of Congress, that no interest in land and buildings shall be forfeited, which does not belong to some one who has participated in or consented to the carrying on of the business of distilling therein, is further manifested in the provision of § 3262 of the Revised Statutes, which directs that "no bond of a distiller shall be approved, unless he is the owner in fee, unincumbered by any mortgage, judgment or other lien, of the lot or tract of land on which the distillery is situated, or, unless he files with the collector, in connection with his notice, the written consent of the owner of the fee, and of any mortgagee, judgment creditor, or other person having a lien thereon, duly acknowledged, that the premises may be used for the purpose of distilling spirits, subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes and penalties shall have priority of such mortgage, judgment or other incumbrance, and that in case of the forfeiture of the distillery premises, or of any part thereof, the title of the same shall vest in the United States, discharged from such mortgage, judgment or other incumbrance."

That section clearly indicates that the interest of an innocent mortgagee or other person having a lien on the lot or tract of land on which the distillery is situated would not otherwise be included in a forfeiture for acts of the owner only.

The provisions of the other sections of the Revised Statutes, relied on to support this information, may be more briefly treated. :

Section 3258 does not forfeit any land or buildings. But it does forfeit every still or distilling apparatus not registered by the person having it in his possession or custody, or under his control; as well as "all personal property in the possession or custody or under the control of such person, and found in the building, or in any yard or inclosure connected with the building in which the same may be set up." Personal prop-

erty, by whomsoever owned, is thus included in the forfeiture, provided that it is in the possession, custody or control of the distiller, as well as found upon the premises. There is no reason for giving a narrower construction to this enactment than to the second provision of § 16 of the act of 1875, above considered.

Section 3305 provides that in case of omission to keep the books required by law, "the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property on said premises used in the business there carried on," shall be forfeited. This description, taken by itself and literally construed, would include not only the distillery and distilling apparatus, but "the lot or tract of land on which it stands," by whomsoever owned, as well as all personal property on the premises and used in the business there carried on. But it is hard to believe that Congress intended that a forfeiture of real estate, under this section, for not keeping books, should be more comprehensive than the like forfeiture, under the leading section already considered, for the graver offence of carrying on the business of a distiller without having given bond, or with intent to defraud the United States of the tax upon the spirits distilled. The more reasonable construction is that the brief summary of § 3305 was intended to conform substantially, in scope and effect, to the fuller definitions in § 3281, (reënacted in § 16 of the act of 1875,) and to forfeit, without regard to the question of ownership, the distillery and distilling apparatus, and all personal property found on the premises and used in the business there carried on; but, as to the real estate, to forfeit only the right, title and interest of the distiller, and of any persons who participate in or consent to the carrying on of the distillery.

The next question to be determined is from what time the forfeiture takes effect.

By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States,

although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offence is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.

The rule was early applied under statutes enacting that whenever goods, the importation of which was prohibited, should be imported, they should be forfeited; and that if any ship should leave port without clearance or giving bond as required by law, the ship and the cargo should be forfeited. *United States* v. *Coffee,* 8 Cranch, 398; *The Mars,* 8 Cranch, 417. It has been recognized and acted on in cases of goods imported in fraud of the customs laws. *Gelston* v. *Hoyt,* 3 Wheat. 246, 311; *Wood* v. *United States,* 16 Pet. 342, 362; *Caldwell* v. *United States,* 8 How. 366. And it has been steadfastly upheld under the internal revenue laws; in one case, under an enactment punishing by fine and imprisonment any person removing distilled spirits from the distillery contrary to law, with intent to evade the payment of the tax thereon, and providing that spirits so removed should be forfeited; and in another case under an enactment that any person fraudulently executing an instrument required by the internal revenue laws should be punished by fine and imprisonment, and the property to which the instrument related should be forfeited. *Henderson's Distilled Spirits,* 14 Wall. 44; *Thacher's Distilled Spirits,* 103 U. S. 679.

The rule is equally applicable to the statutes now in question. In the act of February 8, 1875, c. 36, § 16, the four provisions, before quoted, relating to forfeiture, follow immediately after the clause prescribing the punishment by fine and imprisonment of the offender, and contain nothing to imply that the forfeiture of all the kinds of property mentioned is not to take effect at one and the same time. The forfeiture, under the first of those provisions, of spirits and wines, stills and apparatus, owned by the offender, is evidently intended to take effect immediately upon the commission of the offence, so as to prevent any subsequent alienation by him before seiz-

ure and condemnation; and the words "wherever found" merely preclude all limit of place, and have no tendency to postpone the time when the forfeiture shall take effect. In the second provision, the restriction to personal property "found in the distillery," or upon the premises of which it is part, is a limit of place only, and does not postpone the forfeiture of such property which is on the premises when the offence is committed; and from what date a forfeiture of personal property not on the premises at the time of the commission of the offence, but brought there afterwards, should take effect, this case does not require us to consider. That the forfeiture of real estate, under the third and fourth provisions, must take effect as soon as the offence is committed, is yet clearer; for those provisions contain nothing which by any possible construction could be supposed to postpone the forfeiture; and by the common law of England, even in the case of the forfeiture of all the real and personal estate of an offender, while the forfeiture of his goods and chattels was only upon conviction and had no relation backwards, the forfeiture of his lands had relation to the time of the offence committed, so as to avoid all subsequent sales and incumbrances. 4 Bl. Com. 387. The forfeitures under §§ 3258 and 3305 of the Revised Statutes are governed by the same considerations.

It remains to apply the provisions of the statutes to the admitted facts of this case.

Stowell claims the real estate and certain machinery and fixtures, as well as a number of butts and a quantity of malt and hops.

The butts were personal property, used in the business of the brewery. Assuming them to have been sold and delivered by Dixon to Stowell before any offence was committed by which a forfeiture was incurred, yet they were suffered by Stowell to remain in Dixon's possession, custody and control, and were upon the premises at the time of the commission of the offence, and found there at the time of the seizure. They were therefore forfeited under each of the sections relied on.

As to the malt and hops, the case is even clearer in favor of the United States; for not only were they intended to be

used in the brewery, and were in the possession, custody and control of Dixon; and upon the premises, both at the time of the commission of the criminal acts and of the seizure, but Stowell acquired no right whatever in them until after such acts had been committed.

Of the real estate, Stowell, more than a year before the unlawful acts began to be committed by which a forfeiture was incurred, took a mortgage from Dixon, subject to a prior mortgage for $1500, and to secure a debt of $2500. This mortgage conveyed a distinct interest in the real estate to the mortgagee; and, by the law of Massachusetts, as between the mortgagor and the mortgagee, vested the fee in the latter; but, subject to the mortgage, and as regarded third persons, left the legal title in the mortgagor. *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386, 441; *Ewer* v. *Hobbs,* 5 Met. 1, 3; *Howard* v. *Robinson,* 5 Cush. 119, 123. As soon as a still was set up on the land, with the mortgagor's knowledge and consent, in violation of the internal revenue laws, the forfeiture under those laws took effect, and (though needing judicial condemnation to perfect it) operated from that time as a statutory conveyance to the United States of all the right, title and interest then remaining in the mortgagor; and was as valid and effectual, against all the world, as a recorded deed. The right so vested in the United States could not be defeated or impaired by any subsequent dealings of the mortgagee with the mortgagor. *Upton* v. *South Reading National Bank,* 120 Mass. 153, 156. The mortgagor's subsequent conveyance of the land by quitclaim deed to the mortgagee, therefore, passed no title as against the intervening right of the United States. But this deed did not have the effect of merging or uniting the mortgage and the equity of redemption in one estate, because, by reason of that intervening right, it was for the interest of the mortgagee that the mortgage should be kept on foot. The quitclaim deed, being void or voidable, left the mortgaged estate exactly where it found it. *Factors' & Traders' Ins. Co.* v. *Murphy,* 111 U. S. 738, 744; *Dexter* v. *Harris,* 2 Mason, 531, 539; *New England Jewelry Co.* v. *Merriam,* 2 Allen, 390; *Stantons* v. *Thompson,* 49 N. H. 272.

It being admitted that the business of a distiller was not carried on with the mortgagee's permission or connivance, and that he did not even know, until after the seizure, that a still had been set up on the premises, it follows, for the reasons already stated in discussing the construction and effect of the statutes in question, that the mortgage is valid as against the United States, and that, so far as concerns the real estate, the judgment of condemnation must be against the equity of redemption only.

As to the boiler, engine, pump, vats and tanks, the forfeiture must be equally limited. As we understand the somewhat ambiguous statement of the facts regarding them, they were upon the premises before the still was set up, and were owned by Dixon, and not by the distillers; and it is not shown that any of them were used or fit to be used in connection with the distillery, which were not already in lawful use in the brewery. In that view, even if they, or some of them, would be trade fixtures as between landlord and tenant, yet, while annexed to the land, they were real estate, and covered by the mortgage. *Kutter* v. *Smith*, 2 Wall. 491; *Freeman* v. *Dawson*, 110 U. S. 264, 270; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306; *Bliss* v. *Whitney*, 9 Allen, 114.

The horses, wagons and harnesses claimed by Bevington were personal property, used in the business of the brewery, and were sold and a formal delivery of them made to Bevington by Dixon after the acts had been committed by which a forfeiture was incurred; they were afterwards suffered by Bevington to remain under Dixon's control and in his use, and they were found upon the premises at the time of the seizure. They were, therefore, forfeited under each of the sections relied on by the United States.

*Judgment reversed, and case remanded for further proceedings in conformity with this opinion.*