**UNITED STATES v. HAMILTON et al.**

**SMITH et al. v. UNITED STATES et al.**

**Nos. 3370, 3371.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 29, 1932.

H. H. Rumble, Sp. Asst. to Atty. Gen. (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

D. Arthur Kelsey, of Norfolk, Va. (Kelsey & Jett, of Norfolk, Va., on the brief), for Foster Hamilton.

Before NORTHCOTT and SOPER, Circuit Judges, and MEEKINS, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal in admiralty from a decree of the United States District Court for the Eastern District of Virginia, sustaining exceptions to the libel of information against the gas screw Violet and dismissing the libel.

The facts as found by the court are as follows:

"The gas screw 'Violet' on October 31, 1930, was licensed to carry on the coasting trade with her home port at Baltimore, Maryland. In the early morning of January 12, 1931, the 'Violet' was discovered by Coast Guard Patrol Boat CG-221 in Chesapeake Bay running without lights. She was immediately hailed by the Coast Guard, but refused to stop. There ensued an exciting chase during which the Coast Guard sprayed the 'Violet' with one-pound shots, machine gun and rifle bullets until she was finally run aground about two miles off Old Plantation Light.

"The 'Violet' had on board bags or cases containing about 12,500 quarts of intoxicating liquor, her only cargo, which she had shortly before smuggled through the Capes into the United States, after having contacted a foreign ship or vessel on the Atlantic Ocean off the shore of the United States.

"The vessel was seized by the Coast Guard and taken to Norfolk, where with her cargo she was delivered into the custody of the Collector of Customs, Fourteenth Collection District, pending her disposition pursuant to valid legal proceedings.

"Shortly after her seizure these proceedings for condemnation and forfeiture of the 'Violet' for violation of the Tariff Act of 1930, sections 585, 586 and 587 (19 USCA §§ 1585–1587) and trading outside of her license in violation of section 4377 of the Revised Statutes (USCA, title 46, § 325), were instituted in this Court.

"At the time the 'Violet' was seized Asa Ketchum, going under the alias 'John C. Karey,' was the master in charge of the 'Violet'; John Rogers, now a fugitive from justice, the engineer; and Charles Ketchum, then going under the alias 'Jim Gray,' deck hand. Charles Ketchum, alias Gray, is a son of said Asa Ketchum, alias Karey.

"All three members of the crew were arrested, bailed by a Commissioner, and upon the convening of the next term of this Court (May 4, 1931) were indicted for the transportation of intoxicating liquors in violation of the National Prohibition Act. Asa Ketchum, alias Karey, the master of the vessel, was also indicted for smuggling in violation of the Tariff Act. Charles Ketchum, alias Gray, the deck hand, pleaded not guilty, was tried and convicted for violation of the National Prohibition Act and sentenced to the penitentiary. Defendant Ketchum, alias Karey, the master, pleaded guilty both to the indictment for violation of the National Prohibition Act and to the indictment charging him with smuggling. He was sentenced on each indictment to serve a term in the Federal penitentiary, but the sentence for violation of the Tariff Act was suspended for three years on condition of good behavior. Rogers, the

engineer, after being bailed by a United States Commissioner for his appearance to answer the charge of violating the Prohibition Act, skipped and is still a fugitive from justice. His bail bond in the penalty of $7,-500.00 was forfeited to the United States."

The judge below, after an exhaustive discussion of the decisions in the federal courts, many of which are conflicting, held that the vessel must be proceeded against under section 26 of title 2 of the National Prohibition Act (27 USCA § 40), and entered a decree dismissing the libel.

Since this decision, the Supreme Court has passed on the question raised here, and, as we interpret the decisions, affirmatively said that the vessel can be proceeded against under sections 586 and 587 of the act of Congress known as the Tariff Act of 1930 (19 USCA §§ 1586, 1587), as claimed in the libel. General Motors Acceptance Corporation v. United States, 286 U. S. 49, 52 S. Ct. 468, 470, 76 L. Ed. 971; United States v. Commercial Credit Co., Inc., 286 U. S. 63, 52 S. Ct. 467, 76 L. Ed. 978; The Ruth Mildred, 286 U. S. 67, 52 S. Ct. 473, 76 L. Ed. 981; The Sebastopol, 286 U. S. 70, 52 S. Ct. 474, 76 L. Ed. 983.

In an opinion by Mr. Justice Cardozo, in General Motors Acceptance Corp. v. United States, supra, in which opinion all the various decisions on this point are arrayed, the court said: "The appellants would have us hold that prosecution of the offender may be based at the election of the government either on the one act or on the other, but that forfeiture of the implements used in his offending may be based on only one of them. The consequence of such a holding would be to withdraw from the tariff acts remedies and sanctions existing for the better part of a century. Forfeiture of vehicles bearing smuggled goods is one of the time-honored methods adopted by the government for the repression of the crime of smuggling. The provisions of the Revised Statutes, Sections 3061 and 3062, which carried forward the provisions of earlier acts (Act of July 18, 1866, c. 201, 14 Stat. 178, § 3), have in turn been carried forward into the United States Code. U. S. Code, title 19, §§ 482, 483 (19 USCA §§ 482, 483). By implication, if not in express terms, they were recognized as law in the Tariff Act of 1922, which declares it to be the duty of any customs agent who has made seizure of a vehicle for violation of the customs law to turn the vessel over to the collector of the district. Tariff Act of 1922, c. 356, § 602 [42 Stat. 984], U. S. Code, title 19, § 509 (19 USCA § 509). They are recognized by like provisions in the Tariff Act of 1930. Act of 1930, c. 497, § 602 [46 Stat. 754], U. S. Code, title 19, § 1602 (19 USCA § 1602). Indeed, the same implication persists in the Prohibition Law itself, or in Acts connected with it. By section 1 of the act of March 3, 1925, c. 438, 43 Stat. 1116, U. S. Code, title 27, § 41 (27 USCA § 41), 'any vessel or vehicle summarily forfeited to the United States for violation of the customs laws, may, in the discretion of the Secretary of the Treasury, under such regulations as he may prescribe, be taken and used for the enforcement of the provisions of this title (i. e., the title, Intoxicating Liquors) in lieu of the sale thereof as provided by law' (cf. 27 U. S. Code, § 42 [27 USCA § 42]). Certain it is therefore that vehicles carrying smuggled merchandise other than intoxicating liquors may still be seized and forfeited under the provisions of the tariff acts and those of the Revised Statutes ancillary thereto. The forfeiture may be enforced even against innocent owners, though the Secretary of the Treasury may remit it, upon such terms as he deems reasonable, if satisfied that there was neither wilful negligence nor intent to violate the law. Rev. St. § 3078; Tariff Acts of 1922 and 1930, sections 613, 618 (19 USCA §§ 520, 532, and §§ 1613, 1618). The penalty is at times a hard one, but it is imposed by the statute in terms too clear to be misread. Beyond all room for question, the owner of a vehicle bearing smuggled merchandise runs the risk of forfeiture, subject to remission by the grace of an administrative officer, where the merchandise is medicine or wheat or dry goods or machinery, subjects of legitimate trade upon payment of the lawful duties. * * * "

Pointing out that the case was to be distinguished from Richbourg Motor Company v. United States, 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081, for the reason, amongst others, that there is a difference between R. S. § 3450 (26 USCA §§ 1181, 1182), relating to internal revenue, on the one hand, and R. S. §§ 3061 and 3062 (19 USCA §§ 482, 483) in the Tariff Act, on the other, the court said:

"To refuse to give heed to these distinctions will lead us into a morass of practical difficulties as well as doctrinal refinements. If forfeiture of a vehicle seized in the course of importation must always be under section 26, and not under other statutes, then the smuggler arrested at the same time must always be prosecuted under the prohibition act, and never for the smuggling, since seizure

under section 26 must be followed, as we have seen, by prosecution of the arrested person under that title and no other. We cannot bring ourselves to believe that Congress had in view the creation of so great a breach in historic remedies and sanctions. Cf. United States v. American Motor Boat K-1231 [(C. C. A.) 54 F.(2d) 502], supra. Derangement of a system thus rooted in tradition is not to be inferred from a section aimed upon its face at transportation within the United States and not at importation from without. Cf. Maul v. United States, 274 U. S. 501, 508, 47 S. Ct. 735, 71 L. Ed. 1171. Repeals by implication are not favored (Henderson's Tobacco, 11 Wall. 652, 20 L. Ed. 235; United States v. Tynen, 11 Wall. 88, 92, 20 L. Ed. 153), and least of all where inveterate usage forbids the implication. Indeed, the breach, if we once allow it, will hardly be confined within the ramparts of the acts that regulate the duties upon imports. If a forfeiture under the customs laws is forbidden where there has been an unlawful importation of intoxicating liquors, we shall have difficulty in upholding a forfeiture where there has been a violation of the navigation laws or other cognate statutes. Already the net of these complexities has entangled the decisions. Cf. The Ruth Mildred, 286 U. S. 67, 52 S. Ct. 473, 76 L. Ed. 981, and General Import & Export Co. v. United States, 286 U. S. 70, 52 S. Ct. 474, 76 L. Ed. 983. Courts accepting the conclusion that the customs forfeitures are ended in respect of intoxicating liquors have been unable to extricate themselves from the conclusion that forfeitures under the navigation acts have fallen at the same time. A halt must be called before the tangle is so intricate that it can no longer be unraveled."

Again in The Ruth Mildred, supra, Mr. Justice Cardozo said: "Our decision in General Motors Acceptance Corporation et al. v. United States of America, 286 U. S. 49, 52 S. Ct. 468, 76 L. Ed. 971, would require a reversal of this judgment if the vessel had been seized for unlawful importation in violation of the tariff act. Even more plainly that result must follow where the basis of the seizure is a breach of the navigation acts growing out of a departure by the vessel from the conditions of her license. Contrast with the decision below the decision of the same court in United States v. American Motor Boat K-1231 [C. C. A.] 54 F.(2d) 502. By section 4377 of the Revised Statutes (U. S. Code, title 46, § 325 [46 USCA § 325]): 'Whenever any licensed vessel * * * is employed in any other trade than that for which she is licensed, * * * such vessel with her tackle, apparel, and furniture, and the cargo, found on board her, shall be forfeited.' The Ruth Mildred was licensed for the fishing trade and not for any other. She would have been subject to forfeiture if her cargo had been wheat or silk or sugar. In a suit under this statute, her guilt was not affected, was neither enlarged nor diminished, by the fact that the cargo happened to be one of intoxicating liquors. The government made out a case of forfeiture when there was proof that the cargo was something other than fish. Forfeiture under section 26 of title 2 of the National Prohibition Act is one of the consequences of a successful criminal prosecution of a personal offender, and is ancillary thereto. Forfeiture under the Revised Statutes, § 4377, for breach of the navigation laws, is strictly in rem, and is not dependent upon a preliminary adjudication of personal guilt. United States v. Stowell, 133 U. S. 1, 16, 17, 10 S. Ct. 244, 33 L. Ed. 555. In brief, the basis of the charge of guilt directed against this vessel is not a breach of the National Prohibition Act nor any movement of transportation, lawful or unlawful. It is the act of engaging in a business other than the fishing trade in contravention of a license."

As this court said in The Pilot, 43 F.(2d) 491, 493: "There is nothing in common between the National Prohibition Act and the navigation laws, and a vessel that engages in an unlawful trade contrary to the terms of her license need not necessarily be proceeded against under the National Prohibition Act because of the fact that the contraband cargo she carries is liquor. She may have violated both the National Prohibition Act and the navigation act at the same time. Being licensed to engage in fishing only and being found engaged in another and an illegal trade, she became subject to forfeiture for violation of the terms of her license under the provisions of section 4377 of the Revised Statutes (46 USCA, § 325)."

In this case the crew of the Violet was indicted for violating both the Tariff Act and the National Prohibition Act. Both acts were unquestionably violated. The master was convicted on both indictments. Certainly this could not be construed as an election by the government to proceed under the National Prohibition Act only.

In addition to this, the vessel, immediately after seizure, was turned over to the collector of customs, at Norfolk, Va., and the libel was filed before any indictment. In United States v. Stowell, 133 U. S. 1, 10 S. Ct. 244, 247, 33 L. Ed. 555, the Supreme Court

said: "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."

The decree of the court below is reversed, and the cause remanded for further proceedings in accord with this opinion.

Reversed.