### FEDERAL CREDIT CO. v. UNITED STATES.
### No. 9141.

Circuit Court of Appeals, Fifth Circuit.
Jan. 26, 1940.

Rehearing Denied Feb. 23, 1940.

M. M. Roberts, of Hattiesburg, Miss., for appellant.

Toxey Hall, U. S. Atty., of Jackson, Miss., and W. J. Vollor, Asst. U. S. Atty., of Vicksburg, Miss., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment of forfeiture to the United States of a certain two-door Ford sedan which was seized on the ground that it was being used, and was intended to be used, in the transportation of goods and utensils to an illicit distillery. The judgment of condemnation further denied a petition of the Federal Credit Company, a corporation, and Howard A. McLemore for remission or mitigation of the forfeiture. There was no appeal by the owner or possessor of the car, the sole appellant being said corporation, which intervened and claimed the car as an innocent and bona fide lienholder.

The libel of information alleged that there were in said automobile when seized two ten-gallon kegs which were intended to be used as containers of tax-unpaid liquor, and that said car was intended to be used for the unlawful removal, concealment, and deposit of whiskey with the intention to defraud the United States of the internal revenue imposed thereon. One of the operators of the still was alleged to have been in possession of the car at the time of its seizure. The defense is that the car was seized before any illicit whiskey was removed, concealed, or deposited therein and consequently was not subject to forfeiture under the statute; and further that appellant was an innocent party in the transaction.

The district court found that Howard McLemore, who bought the car, had a record for handling tax-unpaid liquor, having been previously convicted of violating the internal revenue laws with reference thereto, and that this reputation was known to appellant before it acquired the paper evidencing the unpaid purchase price of the car, but that the Credit Company had a conversation with Howard McLemore, and from this conversation reached the conclusion that it would be safe in buying the paper, as he would not use the car for handling such liquor, but would keep it for use principally by his wife as a family car; that thereafter Howard lent the car to his brother, Leroy McLemore, who at the time was engaged in the unlawful manufacture of whiskey, and who placed two kegs in it that were intended to be used for the purpose of depositing and concealing whiskey, upon which the tax had not been paid, with the intent of defrauding the Government of the revenue thereon.

The car was seized by federal officers as Leroy McLemore drove up in it and stopped in front of a house in the rear of which an illicit still, in which Leroy had an interest, was located. The officers had previously seized the still, and were awaiting the arrival of the owner or operator, as they observed no place to store the daily output thereof and expected some one to come who would haul away the whiskey that had been run that day. It was early in the night when Leroy drove up in the car, stopped, left his lights on for a while, and sat there a few minutes to get his bearings; then turned off his lights, threw a ten-gallon keg on the ground, got out and walked around the car, flashed an electric light, picked up the keg, put it on his shoulder, started toward the path leading to the side of the house, and whistled. One of the officers answered the whistle; and arrested him. Upon searching the car, they found the rear seat completely gone, and another ten-gallon keg and particles of rye, sugar, and charcoal in the back of the car where the seat had been. Both kegs had the odor of whiskey in them, and were of the type commonly used by men engaged in the manufacture and sale of intoxicating liquor.

Purchase slips and receipts were found on the person of Leroy McLemore at the time of his arrest, which listed articles and equipment similar to those found at the site of the still. Some of the slips listed rye, sugar, charcoal, and other materials generally used in connection with the operation of a whiskey distillery. These and other

circumstances in evidence convinced the court below that the kegs and other materials in the car were used and intended to be used in the manufacture and sale of tax-unpaid intoxicating liquor.

The district court reached its conclusion not from any single fact or circumstance but from all the evidence in the case. The statute[1] not only prescribes a penalty for every person who fraudulently removes, deposits, or conceals any goods or commodities in respect whereof a tax is imposed and has not been paid, but prescribes that the utensils or materials intended to be used in the making of such goods or commodities with fraudulent intent to evade the tax shall be forfeited; that all the casks or other packages containing or which shall have contained such goods or commodities shall be forfeited; and, finally, that every vessel, boat, carriage, or other conveyance whatsoever, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited.

The evidence shows that this automobile was used in the removal and for the deposit and concealment of casks, utensils, and materials proper and intended to be made use of in the manufacture of tax-unpaid whiskey. In every such case the casks, utensils, and materials shall be forfeited, and every conveyance used in the removal or for the deposit or concealment thereof shall also be forfeited.

[1, 2] Statutes imposing penalties or requiring forfeitures are ordinarily strictly construed, but laws enacted for the protection of the public revenues against frauds are presumed to be for the good of the public and should be fairly and reasonably construed so as to carry out the legislative intent.[2] Such a construction upholds this forfeiture.[3]

The appellant may not be regarded as an innocent actor in this case,[4] and the judgment of the district court is affirmed.

---

[1] Revised Statutes, § 3450, 26 U.S.C.A. § 1441.

[2] United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555; Ash Sheep Co. v. United States, 252 U.S. 159, 40 S.Ct. 241, 64 L.Ed. 507.

[3] United States v. One Bay Horse et al., D.C., 270 F. 590; C. I. T. Corp. v. United States, 9 Cir., 44 F.2d 950; United States v. One Ford Truck, D.C., 46 F.2d 176; United States v. One Ford Truck, etc., D.C., 3 F.Supp. 286.

[4] Liquor Law Repeal and Enforcement Act, c. 740, 49 Stat. 872, 878, § 204 (b) (2), 27 U.S.C.A. § 40a(b)(2). Cf. United States v. One Ford Truck, etc., D.C., 3 F.Supp. 283.