**DE BONIS v. UNITED STATES.**

Civ. A. No. 9169.

United States District Court
W. D. Pennsylvania.

Feb. 25, 1952.

124

William J. Joyce, and Martin E. Cusick, of Wiesen, Cusick & Madden, Sharon, Pa., for plaintiffs.

W. Wendell Stanton, for Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

MARSH, District Judge.

This action was instituted by Anthony DeBonis against the United States on October 26, 1950, to recover damages for the illegal seizure of a 1941 Plymouth coupe.

By stipulation it was agreed that on May 19, 1948 Anthony DeBonis was the owner of a 1941 Model Plymouth coupe, and that on that date the same was seized without a warrant on the DeBonis premises at Sharon, Mercer County, Pennsylvania, by two representatives of the Alcohol Tax Unit for the Western District of Pennsylvania. The Government failed to sustain libel proceedings and on June 30, 1950, this vehicle was returned to the plaintiff, Anthony DeBonis. It was further agreed by stipulation that the record of the libel proceeding in the District Court, D.C.W.D. Pa.1950, 88 F.Supp. 93, and in the Court of Appeals, 3 Cir., 1950, 182 F.2d 180, be made a part of this record.

From these prior proceedings, we find that it was established that state police officers on February 14, 1948, discovered a still near Sharon, Pennsylvania, and learned that a man named Rocco DeBonis had visited the still in a 1941 black Plymouth coupe. Rocco DeBonis was charged with conspiracy to violate the Internal Revenue Laws, 18 U.S.C.A. § 88, revised § 371, and pleaded nolle contendere. The District Court found this Plymouth

" * * * was used by Rocco DeBonis to transport ingredients and materials that were necessary for the manufacture and production of the alcoholic beverages. This activity occurred at one time or the other during the period from October 1, 1947 to February 12, 1948.

"During this time Amelia Theresa Vince, a daughter, was the owner of the motor vehicle. Title was held from November, 1944 until April, 1948. Title was transferred to Anthony DeBonis in April of 1948. He was the owner when the car was seized by Federal Revenue Agents on May 19, 1948, and he is the present owner and claimant.

" * * * Anthony DeBonis claims to be the purchaser of the car in good faith.

"The motor vehicle was seized on premises occupied by Rocco DeBonis and at that time it was not being used for any unlawful purpose." [88 F.Supp. 95.]

From the opinion of the Court of Appeals, it appears [182 F.2d 181]: "At 6:30 in the morning on May 19, 1948, three months after the raid on the still, two investigators of the Alcohol Tax Unit entered the yard of the DeBonis residence, where the automobile and a truck[1] were parked, and drove both vehicles away. The officers had no search warrant. They seized the automobile. It is conceded that when the automobile was taken it contained no contraband, nor is there any evidence that the vehicle had been used for illegal purposes since the seizure of the still or that it was so to be used in the future. Nor is there any suggestion that the car was in danger of being removed from within reach of the authorities."

On these facts the forfeiture libel was granted by the District Court, but the judgment was reversed by the Court of Appeals, with directions to dismiss the libel.

In addition to these facts, we find that the revenue agents committed a wrongful act in seizing the vehicle without a warrant while acting in the scope of their employment.[2] From the instant proceeding it appears that the vehicle was not used but was stored from May 19, 1948 to June 30, 1950, when it was returned to plaintiff. As a result of the temporary loss of this chattel, plaintiff suffered damages in the sum of $99, which is the amount he paid to a brother-in-law for transportation to and from work at the rate of $1.80 per week for about 55 weeks.[3] Plaintiff also claimed damages for depreciation and loss of use of his vehicle but these cannot be taken into consideration because the former was not a proximate result of the seizure and detention, and damages assessed for the latter would be too speculative.

Anthony DeBonis claims this Court has jurisdiction of his complaint for damages under Section 1346(b), 28 U.S.C.A., as amended, being a section of the Federal Tort Claims Act.

This section provides in part: " * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The Government contends that the Court does not have jurisdiction of this action for the reason that it comes within the exceptions to the Federal Tort Claims Act, §§ 2680(a) and 2680(c) of Title 28, U.S.C.A. The Court does not agree. Section 2680(a) exempts the Government from liability upon a claim based "upon an act or omission of an employee * * * exercising due care, in the execution of a statute", or based upon a discretionary function or duty. These Government agents did not take the subject vehicle in the exercise of due care; on the contrary, the illegal seizure without a warrant, as characterized by the Court of Appeals, was a "brazen and unwarranted" act. Under the circumstances they did not have any discretion in this operation,—it was their obligation and duty to comply with the mandate of the Fourth Amendment and

---

1. For litigation involving the truck, see opinion filed this day in the case of Rocco DeBonis v. United States, D.C.W.D.Pa. 1952, 103 F.Supp. 119.

2. Counsel for the Government discloses in his brief that these agents were experienced, and that because of their *training and practice* they believed that a warrant was not necessary under the law and the existing circumstances.

3. The testimony does not disclose whether plaintiff meant that he paid $1.80 per day or per week, but he testified that he lived about two miles from work and therefore we believe he meant $1.80 per week. This arrangement continued from May 19, 1948 to the first or second week in June, 1949 when plaintiff purchased another automobile.

procure a search warrant before entering upon the premises of a private citizen. As to Section 2680(c), we do not think it applies.

 Although not raised by the defendant, the Court is of the opinion that this action is barred by Section 2401(b), Title 28 U.S.C.A., which provides: "A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues or within one year after the date of enactment of this amendatory sentence, whichever is later * * *."

. The date of enactment was April 25, 1949. The action, we think, accrued May 19, 1948, the day upon which the vehicle was wrongfully seized; 54 C.J.S., Limitations of Actions, § 177(5). Thus the "later" date is May 19, 1950. Since the action was not filed until October 26, 1950, the condition imposed by the Act has not been met and the Court is without jurisdiction. See Problems Under the Federal Tort Claims Act, by Honorable Leon R. Yankwich, J.D., L.L.D., 9 F.R.D. 143 at pages 152–3–4; and Adams v. Albany, D.C.S.D. Cal.1948, 80 F.Supp. 876.[4] But even if we are in error on this point we think plaintiff can not recover in any event.

It is the opinion of the Court that plaintiff failed to make out a case under the Tort Claims Act. The forfeiture provision found in 53 Stat. 362, § 3116, Title 26 U.S.C.A., provides: *"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws,* or regulations prescribed under such part or laws, *or which has been so used, and no property rights shall exist in any such liquor or property.* A search warrant may issue as provided in Title XI of the Act of June 15, 1917, 40 Stat. 228 (U.S.C., Title 18, §§ 611–633), for the seizure of such liquor or property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal-revenue laws, or of any other law.

The seizure and forfeiture of any liquor or property under the provisions of this part, and the disposition of such liquor or property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such liquor or property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal-revenue laws." (Emphasis supplied).

In United States v. Stowell, 1890, 133 U.S. 1 at page 16, 10 S.Ct. 244, 247, 33 L.Ed. 555, it was said: "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, *the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States,* although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States *at the time the offense is committed;* and the condemnation, when obtained, *relates back to that time,* and avoids all intermediate sales and alienations, even to purchasers in good faith." (Emphasis supplied). See also United States v. 1960 Bags of Coffee, 1814, 8 Cranch. 398, 12 U.S. 398, 3 L.Ed. 602, and United States v. The Brigantine Mars, 1814, 8 Cranch. 417, 12 U.S. 417, 3 L.Ed. 609.

It was further said, 133 U.S. on page 12, 10 S.Ct. on page 245, of the Stowell case: "By the now settled doctrine of this court, * * * statutes to prevent frauds upon the revenue are considered as enacted for the public good, and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature."

This statement is quoted with approval in Verona v. Schenley Farms Co., 1933, 312 Pa. 57, 167 A. 317.

---

4. It is the duty of the Court, whether limitation is pleaded or not, to dismiss the claim. Cf: Finn v. United States, 1887, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed.

128. See also Rocco DeBonis v. United States, D.C.W.D.Pa.1952, 103 F.Supp. 119.

Both the Court of Appeals and the District Court concluded that the Plymouth coupe had been used in violation of the Internal Revenue Laws. The former held that the unreasonable seizure without a warrant vitiated the forfeiture *proceedings*. United States v. Plymouth Coupe, 182 F.2d 180.

██ Accordingly, the vehicle was returned to plaintiff, not because the Government had lost its right to the chattel, but because the unwarranted acts of its agents caused the Government's possession to be unlawful for jurisdictional purposes. Daeufer-Lieberman Brewing Co. v. United States, 3 Cir., 1925, 8 F.2d 1. But from this it does not necessarily follow that the Government is liable in damages to plaintiff. A forfeiture proceeding is to perfect the Government's title to the seized vehicle, but the Government's right to title and possession was created by the statutory forfeiture which took place when the Internal Revenue Laws were violated "from Oct. 1, 1947 to February 12 1948". United States v. Stowell, supra. At that time the property rights in the vehicle vested eo instanti in the United States. Since that time, as against the United States, the plaintiff had no property rights in this vehicle; his unlawful possession was substantive (§ 3116). Daeufer-Lieberman Brewing Co. v. United States, supra. Consequently, he could have suffered no damages for which he can recover against the United States as a result of illegal search and seizure. It is true that he regained possession because of this illegality but this was a windfall. If the agents had procured a warrant and seized the Plymouth coupe in a lawful manner there is little doubt but that the judgment of forfeiture would have been valid and the car would have been sold. It seems that the plaintiff, instead of suffering damages by virtue of the wrongful act of the agents, received a benefit in that he regained possession of a chattel in which, as against the United States, he never had any rights whatsoever.[5]

It would indeed be anomalous to compel the Government to pay damages for the wrongful seizure and detention of a chattel, possession of which by anyone is made unlawful by Government fiat, 26 U.S.C.A. § 3116, and in which there are no property rights. Especially would this be so when the Government is entitled to the property rights in such chattel as of the time of the illegal use thereof. United States v. Stowell, supra.

██ Also, we think, the sovereign has not consented to be sued in such a situation. A recovery under the Federal Tort Claims Act implies that the claimant has some property rights in the chattel involved. The judgment striking down the forfeiture proceeding because it was initiated by a flagrant violation of the fundamental law by employees of the Government would not, as against the Government, vest in the claimant property rights which he never had. When, in addition, the facts show the sovereign is entitled to condemn that chattel, we conclude it has not agreed to pay damages for the wrongful taking. Claimant's loss, we think, is damage without injury.

Appropriate findings of fact and conclusions of law will be filed herewith.

### Findings of Fact

1. Anthony DeBonis, the plaintiff, brought suit against the United States under the Federal Tort Claims Act to recover damages for the seizure and detention of a Plymouth coupe, 1941 Model, which he purchased for a valuable consideration, without notice, in April, 1948.

2. Prior to purchase, this vehicle had been used to violate the Internal Revenue Laws off and on from October 1, 1947 to February 12, 1948, by Rocco DeBonis.

3. On May 19, 1948, employees of the United States wrongfully seized this vehicle without a warrant while acting in the scope of their employment, causing plaintiff to incur expenses for traveling to and from work in the sum of $99.

---

5. Plaintiff, as an innocent and bona fide purchaser of this vehicle, might have regained possession and title as a matter of grace by applying to the Court for a remission of forfeiture under Section 3617, 18 U.S.C.A.

4. Forfeiture proceedings failed and the vehicle was returned to plaintiff on June 30, 1950.

### Conclusions of Law

1. At the time the motor vehicle involved was used to violate the Internal Revenue Laws, it was forfeited and all the property rights therein, including the right of possession, were vested in the United States, and plaintiff had no property rights therein when it was illegally seized.

2. The plaintiff failed to make out a case which would entitle him to damages under the Federal Tort Claims Act.

3. The complaint should be dismissed with prejudice at the cost of the plaintiff.