UNITED STATES *v.* ONE DISTILLERY.

(*District Court, S. D. California.* October 20, 1890.)

INTERNAL REVENUE—FORFEITURE—DOUBLE PUNISHMENT.

After an officer and stockholder of a corporation engaged in distilling is convicted for a violation of the internal revenue law, an action cannot be maintained to enforce the forfeiture of the corporation's property for the same offense, even though the forfeiture is resisted only by the other stockholders. Following *U. S.* v. *McKee*, 4 Dill. 128.

At Law. Information for the forfeiture of certain real and personal property for alleged violation of the internal revenue laws.

*Willoughby Cole,* U. S. Dist. Atty..
*Henry C. McPike* and *Brousseau & Hatch,* for claimants.

Ross, J.    Sections 3257, 3281, 3305, 3453, and 3456 of the Revised Statutes of the United States are as follows:

"Sec. 3257. Whenever any person engaged in carrying on the business of a distiller defrauds, or attempts to defraud, the United States of the tax on the spirits distilled by him, or any part thereof, he shall forfeit the distillery and distilling apparatus used by him, and all distilled spirits, and all raw materials for the production of distilled spirits, found in the distillery and on the distillery premises, and shall be fined not less than five hundred dollars nor more than five thousand dollars, and be imprisoned not less than six months nor more than three years."

"Sec. 3281. Every person who carries on the business of a distiller without having given bond, as required by law, or who engages in or carries on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or of any part thereof, shall, for every such offense, be fined not less than one thousand dollars nor more than five thousand dollars, and imprisoned not less than six months nor more than two years.    And all distilled spirits or wines, and all stills or other apparatus fit or intended to be used for the distillation or rectification of spirits, or for the compounding of liquors, owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery, or in any building, room, yard, or inclosure connected therewith, and used with or constituting a part of the premises, and all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same, and all personal property owned by or in possession of any person who has permitted or suffered any building, yard, or inclosure, or any part thereof, to be used for purposes of ingress or egress to or from such distillery, which shall be found in any such building, yard, or inclosure, and all the right, title, and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises to be used for such ingress or egress, shall be forfeited to the United States."

"Sec. 3305. Whenever any false entry is made in, or any entry required to be made is omitted from, either of the said books mentioned in the two preceding sections, with intent to defraud or to conceal from the revenue officers any fact or particular required to be stated and entered in either of said books, or to mislead in reference thereto, or any distiller, as aforesaid, omits or refuses to provide either of said books, or cancels, obliterates, or destroys any part of either of said books, or any entry therein, with intent to defraud, or permits the same to be done, or such books, or either of them, are not produced when required by any revenue officer, the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property on said premises used in the business there carried on, shall be forfeited to the United States.    And every person who makes such false entry, or omits to make any entry hereinbefore required to be made, with the intent aforesaid, or who causes or procures the same to be done, or fraudulently cancels, obliterates, or destroys any part of said books, or any entry therein, or willfully fails to produce such books, or either of them, shall be fined not less than five hundred dollars, nor more than five thousand dollars, and imprisoned not less than six months, nor more than two years."

"Sec. 3453. All goods, wares, merchandise, articles, or objects on which

taxes are imposed, which shall be found in the possession or custody, or within the control, of any person, for the purpose of being sold or removed by him in fraud of the internal revenue laws, or with design to avoid payment of said taxes, may be seized by the collector or deputy collector of the proper district, or by such other collector or deputy collector as may be specially authorized by the commissioner of internal revenue for that purpose, and shall be forfeited to the United States. And all raw materials found in the possession of any person intending to manufacture the same into articles of a kind subject to tax for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax, and all tools, implements, instruments, and personal property whatsoever in the place or building, or within any yard or inclosure where such articles or raw materials are found, may also be seized by any collector or deputy collector, as aforesaid, and shall be forfeited, as aforesaid. The proceedings to enforce such forfeiture shall be in the nature of a proceeding *in rem* in the circuit court or district court of the United States for the district where such seizure is made."

"Sec. 3456. If any distiller, rectifier, wholesale liquor dealer, or manufacturer of tobacco or cigars, shall knowingly or willfully omit, neglect, or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything by this title prohibited, if there be no specific penalty or punishment imposed by any other section of this title for the neglecting, omitting, or refusing to do, or for the doing or causing to be done, the thing required or prohibited, he shall pay a penalty of one thousand dollars; and if the person so offending be a distiller, rectifier, or wholesale [liquor] dealer, all distilled spirits or liquors owned by him, or in which he has any interest as owner, and, if he be a manufacturer of tobacco or cigars, all tobacco or cigars found in his manufactory, shall be forfeited to the United States."

Based on these sections, an information was filed by the district attorney on the 13th of November, 1888, and amended on the 11th of January, 1889, for the forfeiture of certain real and personal property therein specifically described, and which was seized by the collector of internal revenue for this district on the 1st day of November, 1888, consisting of five acres of land, situated about four miles from the city of Fresno, upon which stand the distillery and winery buildings and distillery and winery premises theretofore occupied by the Fruitvale Wine & Fruit Company, a corporation organized and existing pursuant to the laws of the state of California, together with all and singular the buildings standing upon said winery and distillery premises; also, one still, one elevator, one grape stemmer, one lot of belting, one cauldron, one suction pump, one wine-press, one wine-tank, two trucks, one windmill and pump, nine wine-tanks, twelve wine-tanks, sixty-nine puncheons, five barrels, fifty-four fermenting tubs, one lot of hose, one grind-stone, and a lot of tools, one Howe scales, one lot of lumber for tanks, one lot of lumber, three hundred gallons of sweet wine, one lot of hoop iron and pipe, one horse and tread-wheel; also, thirty-nine puncheons, eighteen wine-tanks, two fermenting tanks, seventy-eight barrels, twenty-nine half barrels, nine cords of wood, fifteen tons of grapes, four hundred feet of hose, seventy thousand gallons of claret, thirty-eight thousand gallons of white wine, two thousand gallons of port wine, one thousand gallons of brandy, four hundred and fifty gallons of alcohol, ten thousand gallons of wash for brandy, and all the tools, implements, and

utensils used by said Fruitvale Wine & Fruit Company in the manufacture of distilled spirits. The amended information alleged as grounds for a decree of forfeiture of the property in question in substance as follows:

(1) That on the 1st day of June, 1888, the said Fruitvale Wine & Fruit Company had in its possession, custody, and control certain proof brandy and high proof spirits, for the purpose of selling and removing the same in fraud of the revenue laws, and with the design of avoiding payment of the taxes due the government.

(2) That the said Fruitvale Wine & Fruit Company, being a distiller of distilled spirits, and engaged in carrying on that business at the aforesaid distillery, did defraud the government during the months of July, August, September, October, November, and December, 1887, of the tax on a large quantity of spirits distilled by it, by the fraudulent removal of such spirits from the distillery where the same had been distilled to a place other than a distillery, bonded or designated warehouse, or place of depository, without the tax thereon being paid, and without the packages in which the same was contained being stamped or branded, and without the law in relation to distilled spirits being complied with in any manner, and with the intent to defraud the government of the tax due on said spirits.

(3) That the said Fruitvale Wine & Fruit Company, as such distiller, during the months of July, August, September, October, November, and December, 1887, with intent to defraud the government of the tax due on spirits distilled by it, made, through its secretary, W. Moore Young, false entries in the books required by law to kept by it, and omitted to do other things, and perform other acts in relation thereto, required by law to be performed, and by such means defrauded the government.

(4) That the said Fruitvale Wine & Fruit Company, as such distiller, did, during the months of July, August, September, October, November, and December, 1887, knowingly and willfully omit, neglect, and refuse to do or cause to be done any of the acts required by law in carrying on its business of distilling, and did during the same time, in carrying on its said business, commit acts prohibited by the law.

It is alleged that at all of the times referred to Wolters, Helm, Austin, and Kauffman, who are claimants herein, were holders of stock of the Fruitvale Wine & Fruit Company, and were cognizant of all of the alleged fraudulent acts and omissions on the part of the corporation, and that they subsequently, with full knowledge of such fraudulent acts and omissions, purchased all of the said property. Wolters, Helm, Austin, and Kauffman appeared as claimants and filed an answer to the amended information, in which all of the allegations of fraud on their part are denied, and which sets up that they are the owners of all of the property described in the information, or so much of it as actually existed at the time of seizure; that they acquired certain described portions of it by purchase at a public sale made by the assignee of the Fruitvale Wine & Fruit Company on the 9th of June, 1888, for the sum of $7,700, which sum they paid, and thereupon received possession of the property purchased; that thereupon claimants formed a partnership for the purpose of operating the winery on the premises, and added thereto necessary machinery and buildings to the extent of $5,000 in value; that on or about June 20, 1888, and while claimants were in possession of the

premises, and in good faith making large and expensive additions thereto, the property was seized by the collector of internal revenue for an alleged violation of the revenue laws by the Fruitvale Wine & Fruit Company in the year 1887; that, by reason of negotiations with the revenue officials, the property was, on or about October 27, 1888, released, and claimants restored to its possession, whereupon they proceeded to make further improvements and expenditures, and engaged in the business of operating the winery, adding from their personal funds, in the purchase of stock, material, and machinery, the sum of $25,000, pursued the business, and in all respects complied with the laws of the United States and the rules and regulations of the revenue department; that afterwards, to-wit, on or about the 2d day of November, 1888, on account of the alleged wrongful acts of the Fruitvale Wine & Fruit Company occurring in the year 1887, the said premises and property, with all the additions and improvements, stock and material, made and supplied by claimants, were again seized by the revenue officers, and the possession thereof withheld from claimants until on or about November 30, 1888, when claimants were restored to possession by giving a bond in the sum of $35,000; that afterwards, to-wit, on the 8th of December, 1888, the said premises and property were again seized by the internal revenue collector on account of the alleged wrong-doing of the Fruitvale Wine & Fruit Company during its occupancy thereof, and that, in order to prevent the sale of said property and to recover its possession, and to prevent further loss and damage by the suspension of their business, the claimants were compelled to and did pay under protest to the collector the sum of $3,392, alleged to be due and owing from the Fruitvale Wine & Fruit Company to the government by reason of the failure of that corporation to comply with the laws and the rules and regulations of the revenue department during the year 1887; that between the dates of the first seizure, on or about June 20, 1888, and the second seizure, on or about November 2, 1888, claimants added to the premises certain described property, the aggregate value of which was over $25,000, all of which was included in the seizure of November 2d, and also in that of December 8, 1888, without fault on their part. They deny that the 1,000 gallons of brandy, or the 450 gallons of alcohol, or the barrels containing the same, found in their possession at the time of the seizure in November, constituted any part of the property alleged to have been found in the possession of the Fruitvale Wine & Fruit Company on or about June 1, 1887, or that said brandy or alcohol, or the barrels containing the same, ever were in possession of that company at the distillery or elsewhere. They deny that they, or either of them, ever purchased or received from the Fruitvale Wine & Fruit Company any brandy or alcohol or other high proof spirits knowing that the company had defrauded, or sought to defraud, the government, or had failed to apply or sought to avoid the payment of taxes due thereon, or that the same had for any cause become forfeited to the government.

The claimants, by their answer, admit that they were owners of stock in the Fruitvale Wine & Fruit Company, but deny that they, or either

of them, had any knowledge of the alleged frauds on the part of that corporation or its officers, or ever heard of them until after the seizure of the property by the collector. By an amendment to their answer, filed on the 21st of August, 1890, the claimants set up this defense: That after the last seizure, and on the 20th of December, 1888, W. Moore Young was indicted by the United States grand jury upon five separate counts, charging that he had committed unlawful acts against the revenue laws while secretary of the Fruitvale Wine & Fruit Company, upon which indictment he was tried, and, on the 20th of February, 1889, convicted upon the first count and acquitted as to the other four; the record of his conviction being made a part of the amended answer. The first count of the indictment charged that, as secretary of the Wine & Fruit Company, it became the duty of Young to sign and execute each month a statement in writing showing the date, kind of material used, time of operation and amount of brandy distilled by the company of which he was secretary. That during the month of September, 1887, he signed and executed a report for the previous month, in which he knowingly made false and fraudulent statements concerning the matters and things required of him by the law. The second count made a similar charge respecting his statement for the month of September, the third in respect to October, the fourth in respect to November, and the fifth in respect to December, 1887. The amended answer avers that—

"At all the times mentioned in the indictment said Young was a stockholder in the said company, and that at all the times mentioned in the indictment the said company was the owner of all the real and personal property upon which, and in connection with which, the distillery was situated and operated; that it was by virtue of his position as secretary that he was enabled to sign and execute the documents mentioned in the indictment, and that it was only as such officer that he could have signed the documents; that the whole of the capital and property of the corporation consisted of said distillery and winery premises, with the appurtenances to each, and that the capital stock in said corporation owned by said Secretary Young represented the interest and property which he then had in and owned in said distillery, winery, etc.; that the distillery and distillery premises, winery, and real and personal property mentioned in the libel are the same distillery and distillery premises, winery, and real and personal property mentioned and referred to in said indictment against said Young; that the alleged frauds, concealments, and removals of distilled spirits, and the other fraudulent acts set forth in said libel, are the same frauds, concealments, and removals, and other unlawful acts, inquired of and investigated upon the trial of said Young, and in respect to which he was convicted; that all the evidence which would be necessary to establish the various assignments and charges of fraud set out in the libel was used and introduced upon the trial of said Young; that at the time of the alleged commission of the acts for which a forfeiture is sought to be enforced in this action, said Young was one of the owners of all the property, real and personal, upon which a forfeiture could be decreed by the court."

To this defense, the district attorney, on behalf of the government, demurred, and the question of its sufficiency, accepting as true the facts alleged, is now for decision.

The indictment against Young was based on section 3451 of the Revised Statutes, which is as follows:

"Every person who simulates or falsely or fraudulently executes or signs any bond, permit, entry, or other document required by the provisions of the internal revenue laws, or by any regulation made in pursuance thereof, or who procures the same to be falsely or fraudulently executed, or who advises, aids in, or connives at such execution thereof, shall be imprisoned for a term not less than one year nor more than five years; and the property to which such false or fraudulent instrument relates shall be forfeited."

The case of *U. S.* v. *McKee*, 4 Dill. 128, was a civil action brought by the government to recover the liability, denounced by section 3296 of the Revised Statutes, of double the amount of taxes of which the United States had been defrauded by the unlawful removal of whisky from the distilleries of various persons, in which removals it was charged the defendant aided and abetted. The defendant interposed two defenses: (1) That he had been theretofore indicted, convicted, and punished for the same offenses. (2) That for those offenses he had been pardoned by the president. To that answer the government demurred. Mr. Justice MILLER, with whom concurred Judge DILLON, in overruling the demurrer, held that, if the specific acts of removal on which the civil suit was brought were the same which were proved in the indictment, the former conviction and judgment constituted a bar to the civil suit, on the ground that our laws forbid that any one shall be twice punished for the same crime or misdemeanor. That case was cited with apparent approval by the supreme court in *Coffey* v. *U. S.*, 116 U. S. 445, 6 Sup. Ct. Rep. 437. The circumstance that the civil suit was under one section of the Revised Statutes, and the criminal prosecution under another, was not considered to affect the question, nor is any reason perceived why it should. The decision was based upon the averments that both proceedings were for the same acts or transactions. If the government cannot be permitted to maintain a civil action for the recovery of money denounced as a penalty for a violation of one of the sections of the statute, where the same party had been previously prosecuted and convicted and punished for the same acts or transactions under another section, it would seem, for the same reasons, to follow necessarily that the government cannot be permitted to maintain a civil action for the forfeiture of the property of a person for the acts or transactions for which it has previously prosecuted, convicted, and punished him. It is true that in the present case, Young, the person heretofore indicted, convicted, and punished under section 3451 of the Revised Statutes, is not a claimant, and that the claimants, Wolters, Helm, Austin, and Kauffman, allege in their original answer that they acquired by purchase at a public sale, made by the assignee of the Fruitvale Wine & Fruit Company on the 9th day of June, 1888, all of the property in question then in existence, and have since owned the same, together with that subsequently added. But it must be remembered that the pleadings show that the alleged fraudulent acts of commission and omission upon which the government's right to a decree of forfeiture is based occurred in the year 1887, and that it is the established doctrine of the supreme court that the forfeiture took effect immediately upon the commission of the acts denounced by the statute. *U. S.* v. *Stowell*, 133 U. S. 1, 10 Sup. Ct. Rep.

244. "The right to the property then vests in the United States," said the court, "although their title is not perfected until judicial condemnation. The forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed, and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith." The purchase made by Wolters, Helm, Austin, and Kauffman at the sale made in June, 1888, by the assignee of the Fruitvale Wine & Fruit Company was therefore void as against the government, even if they could be regarded as purchasers in good faith. But that they cannot be so regarded is plain, for the reason, among others, that each of them was an owner of stock in that corporation, and therefore interested in the property at the time of the perpetration of the frauds. That sale being void as respects the government for one purpose, is void for all purposes, and the rights of the government are to be determined as though it had never occurred.

The right which the government by this suit asks the court to enforce is the right which vested in it in 1887 to take the property as forfeited by the fraudulent acts on the part of the Fruitvale Wine & Fruit Company. *U. S.* v. *Stowell, supra.* When that right accrued, Young, as an owner of stock in that corporation, had an interest in every part and parcel of the property of the company. The government had the right to proceed by civil action to enforce the forfeiture of the property because of the frauds, or to prosecute the parties engaged in it criminally; but for the same acts it could not do both, according to the ruling in the cases to which reference has been made. It does not seem to me to be material that Young does not here appear as a claimant. If the facts be as alleged, and upon the demurrer they are to be taken as true, the government indicted, convicted, and punished him for certain frauds committed in relation to the property in question; and for the same fraudulent acts and omissions that were introduced in proof in support of that indictment it asks the court in the present suit to decree a forfeiture of the property, the right to which accrued to the government, as has been seen, at the time of the commission of the frauds, and when Young, as a stockholder in the corporation, was interested in every part and parcel of the property. To take the property in which he has an interest is to take his property; and, for the same acts and omissions, to punish him criminally and also take his property, is, for the same offenses, to punish him twice.

The circumstance that Wolters, Helm, Austin, and Kauffman have not been prosecuted for the fraudulent acts and omissions that are made the basis of the present action does not relieve the government's case of the difficulty. To take the property from one stockholder is to take it from all, and I can see no valid reason why the plea in bar of the action may not be interposed by any one interested in the property. Indeed, according to the admiralty practice by which this proceeding is governed, the court protects and holds the property for the benefit of the true owner, whoever he may be. 2 Conk. Adm. 54.

Demurrer overruled.