**UNITED STATES of America, Plaintiff,**

**v.**

**REAL PROPERTY LOCATED AT 12921 TREELINE AVENUE, FORT MYERS, LEE COUNTY, FLORIDA 33913 Together With All Improvements and Appurtenances Thereto, etc., Defendant.**

No. 92–216–Civ–FtM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

Nov. 12, 1993.

Robert P. Barclift, U.S. Atty's Office, M.D. Fla., Paul E. Liles, O'Halloran, Johnson & Waltemyer, Ft. Myers, FL, for U.S.

John Ochs Terry, Terry & Terry, Ft. Myers, FL, for claimant Bill Fussell, Lee County Tax Collector.

Diane Gederian, pro se.

Armen Gederian, pro se.

Walter S. Pesetsky, pro se.

Robert M. Fizer, Ft. Myers, FL, trustee for 80 A.C. South Land Trust.

Jeffrey B. Freeman, LaBelle, FL, trustee.

*ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT AND ORDER OF FORFEITURE*

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff's, United States of America, motion for summary judgment and request for order of forfeiture and memorandum of law in support, filed May 18, 1993, and response thereto, by Tax Collector of Lee County, Florida, Bill Fussell, filed May 29, 1993 (Docket Nos. 26 & 29). Also before the Court are Tax Collector of Lee County, Florida's motion for summary judgment and appendix of evidentiary materials, filed July 29, 1993, and Plaintiff's response thereto, filed on September 2, 1993 (Dockets No. 39 & 41). Because the aforementioned motions and responses center around the same issue, save for the issue of the order of forfeiture raised by Plaintiff, they will be treated concurrently by this Court.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(3) therefore requires the nonmoving party to go beyond the pleadings and by his/her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for

trial." *Celotex,* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

## I

The first issue to be addressed is that raised by Plaintiff's motion concerning the order of forfeiture. Plaintiff has presented the following allegations of fact in support of forfeiture, in his complaint, the affidavit of Special Agent Joseph Schuetz, and the motion now before the Court:

The record owner of the defendant real property is Hugo J. Paez, Trustee, whom Plaintiff has made diligent efforts to serve with process by mail and by publication, all to no avail. Lee County real estate records reflect that the defendant real property was transferred to Hugo Paez by Walter S. Pesetsky, Trustee on August 30, 1989.

On July 12, 1989, an individual by the name of Jairo Muvdi visited the office of Mr. Pesetsky in Miami, Florida, where he entered into an agreement to purchase the defendant property. Muvdi advised Pesetsky that he was acting on behalf of a group of Brazilian investors. It was agreed that the contract selling price would be paid to the seller at or before closing. The remainder of the purchase price was secured by a purchase money mortgage held by Pesetsky. On July 17, 1989, Muvdi paid Pesetsky an initial deposit on the property. Fort Myers attorney, Morton A. Goldberg, was retained by Jairo Muvdi to serve as closing attorney for the purchaser.

From August 1 through August 31, 1989, Nick Muvdi delivered United States currency to Hugo DeJesus Romano, Director of Romco International, Inc., in Miami, Florida. Romco, seemingly an import-export business, was actually operated by Romano as a money-laundering entity for Colombian drug smuggling cartels. Muvdi was referred to Romano by Romano's father, Hugo Romano Fedullo, a Colombian drug smuggler and money launderer. Muvdi has been identified by a confidential informant as an independent money launderer.

Upon receipt of the first delivery of currency from Nick Muvdi, a portion of the funds were deposited into a Romco International "operating" bank account, and another portion was deposited into a money laundering account in the name of Hugo Romano Fedullo. Under the direction of Nick Muvdi, checks were written on this account payable to a trust account in the name of Attorney Goldberg. The checks were subsequently given to Nick Muvdi in Miami on August 8, 1989, and then delivered by Jairo Muvdi to Attorney Goldberg on August 9, 1989.

Between August 23 and August 28, 1989, cashier's checks were purchased from Miami banks with various persons as remitters on the checks, but all checks were made payable to Attorney Goldberg. The checks were subsequently delivered to Goldberg by Jairo Muvdi, prior to closing the transaction involving the defendant real property on September 1, 1989. The checks were deposited into Goldberg's trust account and all disbursements for the closing were made by Goldberg.

During August, 1989, Jairo Muvdi advised his attorney that he was acting on behalf of Hugo Paez, a Colombian investor. Muvdi further advised his attorney that, by virtue of an assignment of interest from Muvdi, Hugo Paez would take title to the defendant real property as Hugo Paez, Trustee. Muvdi made all of the arrangements regarding the purchase of the defendant real property. Neither Walter Pesetsky nor Attorney Goldberg met Hugo Paez.

Jairo Duran uses the alias Hugo Paez, according to intelligence supplied by United States Customs Service. Duran has been indicted by Spanish authorities for narcotics trafficking and is associated with a group of Colombian narcotics smugglers who have been operating on an international level. The United States Customs Service, Office of Enforcement, San Juan, Puerto Rico, has identified Jairo Duran as a suspect in the smuggling activities of the Rosa–Collazo and Manolo Forty smuggling organizations.

Jairo Duran has been identified by a confidential informant as being present at a February 24, 1992 meeting of drug cartel members in Barranquilla, Colombia. Jairo Duran was further identified by the confidential informant as one who presented, to those who were in attendance at such meeting, a real

estate flyer bearing Jairo Muvdi's name and business number and advertising real estate in Lee County, Florida.

On June 18, 1992, a Grand Jury sitting in the Fort Myers Division of the Middle District of Florida returned a superseding indictment against Jairo Muvdi, Nick Muvdi, and Jairo Duran for conspiracy to launder monetary instruments in Case No. 91–121–Cr–FtM–15.

 Plaintiff, United States of America, filed its complaint for forfeiture of real property located in Lee County, Florida, on July 24, 1992. The government seeks forfeiture of the defendant real property from September 1, 1989, pursuant to 18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1956, as proceeds traceable to money laundering, and 21 U.S.C. § 881(a)(6) in that defendant real property was allegedly involved in and/or is traceable to financial transactions designed to conceal the proceeds of illegal international drug activity, pursuant to 21 U.S.C. § 881(a)(6). In a proceeding which seeks the forfeiture of property under the aforementioned statutes, the government has the initial burden of demonstrating the existence of probable cause for belief that a substantial connection exists between the property to be forfeited and illegal drug or money laundering transactions. *United States v. Four Million, Two Hundred Fifty-five Thousand,* 762 F.2d 895, 903 (11th Cir. 1985); *United States v. All Monies,* 754 F.Supp. 1467 (D.Hawaii 1991). The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. *United States v. $41,305.00 In Currency,* 802 F.2d 1339, 1343 (11th Cir. 1986). Once the government demonstrates probable cause, the burden of proof shifts to the claimant to establish by a preponderance of the evidence that the money was not connected to a violation of the statute. *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 905 (11th Cir. 1985), or that he is an "innocent owner" who did not have actual knowledge of the connection between the money and drug transactions, *Id.,* at 906. The claimant must show by a preponderance of the evidence an alter-

native source for the funds, *United States v. $41,305.00 In Currency* at 1345.

This Court finds that the complaint and the motion now before the Court, as well as the affidavit prepared by Special Agent Schuetz, clearly and sufficiently demonstrate the existence of probable cause for belief that a substantial connection exists between the defendant property to be forfeited and illegal drug or money laundering transactions. The facts presented also indicate that Hugo Paez, the individual whose name appears on the title to defendant property, has failed to come forward to show otherwise, despite diligent efforts at serving him with process. Additionally, claimant Tax Collector of Lee County, Florida, does not disagree that Plaintiff is entitled to forfeiture of defendant property. Hence, there being no dispute as to the issue of forfeiture, this Court finds no reason why Plaintiff should not be granted summary judgment and have entered an order of forfeiture on this issue.

## II

The remaining issue raised by the motions at bar is whether Tax Collector of Lee County, Florida can assess the United States for *ad valorem* taxes on the defendant real property. The facts relevant to this issue, as presented by both Plaintiff and Tax Collector, are as follows:

Lee County Tax Collector, Bill Fussell, has filed a claim for unpaid *ad valorem* taxes for 1989 through 1993 and all tax accruing until paid, the tax having become a lien on the property on January 1, 1993. A claim was filed by the Walter S. Pesetsky Trust in this case on or about September 2, 1992, for its interest in the property pursuant to the note and mortgage executed on August 29, 1989, and recorded on September 1, 1989. The United States recognizes the Trust, a mortgage-holder, as an "innocent owner" for purposes of forfeiture and agrees to pay that to which it is entitled by law in the event the United States is successful in obtaining an order of forfeiture.

Additionally, the United States recognizes the interests of the holders of tax certificates, Armen and Diane Gederian, on the defendant

real property. The United States has agreed, informally, to pay that to which the Gederian's are entitled through the date the property is sold by the United States Marshals Service.

The Tax Collector claims, by way of "motion for summary judgment" and the response to Plaintiff's motion for summary judgment, that he is entitled to entry of a judgment that the claim for *ad valorem* real property taxes, for which he has filed a claim herein, as first priority liens on the Defendant, real property. As such, he requests that upon sale of such property, he be paid prior to any other claimant or party, including Plaintiff, all outstanding *ad valorem* real property taxes, interest thereon, his costs herein expended, including a reasonable attorney's fees, and all other sums to which he is entitled, and that any unpaid, current or future taxes remain as first priority liens on such property. In support of this motion, Mr. Fussell makes arguments of court interference with state sovereignty in addition to contending that the lien for unpaid *ad valorem* taxes on the property is protected from forfeiture by the "innocent owner" exception of 21 U.S.C. § 881(a)(6) as explained in *United States v. Parcel of Land, Buildings, Appurtenances, and Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). He further asserts that the doctrine of intergovernmental immunity would not apply to Plaintiff in this instance because the forfeited property will be resold and not used for governmental purposes.

■ It is clear that property owned by the United States is immune from taxation by state and local authorities in the absence of express congressional authorization. This doctrine was first expressed by the United States Supreme Court in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Since *M'Culloch,* the Supreme Court has consistently ruled that congressional consent to such local taxation must by clear, express and affirmative. *United States v. Allegheny County,* 322 U.S. 174, 177, 64 S.Ct. 908, 911, 88 L.Ed. 1209 (1944); *United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958). It is true

that Congress has, on occasion, enacted statutes specifically waiving the sovereign's immunity from local real estate taxation of property held by federal entities, however, this Court has found no legal authority to indicate that Congress waived such immunity when drafting the federal forfeiture statutes.

■ This Court finds that properties forfeited to the United States are owned by the United States as of the date of the activity which renders the property forfeitable, pursuant to the "Relation Back Doctrine" articulated in *United States v. Stowell,* 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890) and codified at 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), and such properties are not subject to state and local taxes arising after the date of the illegal activity, or in the case of properties acquired with proceeds of illegal activity, after the date such properties are acquired. Under the "Relation Back Doctrine," title to forfeited property vests with the United States on the date of the offense giving rise to the forfeiture, although title is not perfected until an order of forfeiture is entered. Therefore, this Court must disagree with Mr. Fussell's contention that by denying the state tax liens on property forfeited to the United States, the courts unconstitutionally interfere with state sovereignty. Although state sovereignty enables states to tax their residents, state and local governments have never been permitted to levy taxes, the incidence of which falls on the United States. Thus, the "Relation Back" Doctrine, does not erode the state's sovereign powers. Under the Doctrine, Lee County's tax liens never attached to the property being forfeited, since the property belonged to the United States as of the date of the first offense giving rise to forfeiture, September 1, 1989.

■ Additionally, Mr. Fussell argues that he, as tax collector, is entitled to payment of the *ad valorem* real property taxes by the United States in this case because he falls under the "innocent owner" exception of 21 U.S.C. § 881(a)(6). He relies primarily on the Supreme Court's decision in *Buena Vista* as support for his position, but this Court concurs with Plaintiff that *Buena Vista* does not alter the fundamental principal that local

taxes cannot be assessed against property in which the United States maintains a title and/or possessory interest.

The Supreme Court, in *Buena Vista*, sought to clarify the application of the "Relation Back" Doctrine by holding that a purported "innocent owner's" claim must be considered before giving effect to the Doctrine. The Supreme Court ruled that the term "owner," as it is used in 21 U.S.C. § 881(a)(6), is not limited to persons with an interest in property obtained prior to the illegal activity giving rise to forfeiture or persons who were bona fide purchasers without knowledge of the illegal activity which renders the property forfeitable. The term "innocent owner" applies to any "owner" who can establish either lack of knowledge about the illegal source of the proceeds or lack of consent to the illegal act. This Court agrees with Plaintiff that *Buena Vista* does not support the Tax Collector's position, that he is entitled to payment of the taxes, because he is not an "owner" of the property, but rather, the "holder" of a lien for taxes. Accordingly, this Court finds that the Tax Collector has not successfully challenged the legal conclusion that the government was the title holder of the defendant property at the time the asserted tax lien arose.

Finally, the Tax Collector asserts that he should be allowed to assess the *ad valorem* taxes against the United States because the defendant property will be acquired by Plaintiff "not for any governmental purpose but solely for the purpose of resale to a private entity." This Court agrees with Plaintiff that this is a bold assumption and that while such may be true, this certainly cannot be taken as a fact in deciding the issue presented by the subject motions. Accordingly, it is

**ORDERED** that:

(1) Plaintiff's motion for summary judgment be **granted** and the defendant real property hereby be **forfeited** to the United States of America for disposition pursuant to the law. Forfeiture of the defendant real property is subject, however, to the mortgage of the Walter S. Pesetsky Trust and the interests of Armen and Diane Gederian, which are subordinate only to the costs and expenses of the United States Marshals Service associated with this forfeiture, and

(2) The claim and motion for summary judgment of Tax Collector for property taxes due on the property subsequent to September 1, 1989, the date title in the subject property vested in the United States pursuant to 21 U.S.C. § 881(h), be **denied.** Property taxes which accrued on the property prior to September 1, 1989 if any, shall be paid to the Lee County Tax Collector from the proceeds of sale by the United States Marshals Service, and,

(3) The Clerk of the Court **shall** enter judgment of forfeiture in favor of Plaintiff and in conformance with this order.

**DONE AND ORDERED.**