UNITED STATES of America,
Plaintiff,

v.

A GROUP OF ISLANDS KNOWN AS "CAYOS DE BARCA" TOGETHER WITH APPURTENANCES, ATTACHMENTS AND IMPROVEMENTS THEREON, LOCATED OFFSHORE SALINAS, PUERTO RICO; et als, Defendants.

No. 93–1299(DRD).

United States District Court,
D. Puerto Rico.

Nov. 30, 2001.

Jose J. Santos-Mimoso, United States Attorney's Office, Hato Rey, PR, Jacqueline D. Novas-Debien, Morris & Morris, LLP, Flower Mound, TX, for plaintiff.

Guillermo De-Guzman-Vendrell, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for defendants.

Luis R. Rivera-Rodriguez, Hato Rey, PR, Francisco Reyes-Bejarana, San Juan, PR, William M. Vidal-Carvajal, San Juan, PR, Edwin Quinones, Axtmeyer, Benitez & Quinones, PSC, San Juan, PR, Joseph C. Laws, San Juan, PR, Elvin Santiago-Canizares, Santa Isabel, PR, Ramon Garcia-Garcia, Santurce, PR, Robert Millan, Rio Piedras, PR, Monserrate Flores-Medina, Trujillo Alto, PR, Heriberto Quinones-Echevarria, Cidra, PR, Jose R. Durand-Villar, Hato Rey, PR, Ismael H. Herrero, Jr., Correa, Collazo, Herrero, Jimenez, San Juan, PR, Nestor Mendez-Gomez, Pietrantoni Mendez & Alvarez, Hato Rey, PR, Francisco M. Lopez-Romo, Orlando, FL, Daniel R. Lopez-Gonzalez, McConnell Valdes, San Juan, PR, Rafael Maldonado-Nicolai, San Juan, PR, Frank Catala-Morales, San Juan, PR, Jorge L. Cordova, Jr., Rivera Tulla & Ferrer, Hato Rey, PR, Siro Gutierrez-McCormick, San Juan, PR, Hernando A. Rivera-Diaz, Totti & Rodriguez Diaz, Hato Rey, PR, David C. Indiano-Vicic, Indiano & Williams, PSC, San Juan, PR, Segundo Diaz-Ortiz, Caparra, PR, Humberto Guzman-Rodriguez, Martinez Odell & Calabria, San Juan, PR, William M. Vidal-Carvajal, San Juan, PR, Raul Caballero-Melendez, San Juan, PR, Francisco Santiago-Rodriguez, San Juan, PR, for claimants.

Nelson Robles-Diaz, Robles & Robles, Hato Rey, PR, trustee.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is a Motion to Set Aside Order (Docket No. 264), filed by JER Revenue Services P.R., Inc. ("JER"). JER filed the motion on August 9, 2001, and is appearing in this case for that purpose only (Docket No. 265). After having considered Older Communications Developers Corporation's ("Older") opposition to said motion, this Court now **DENIES** JER's motion.

### I

The Court begins by briefly summarizing the procedural background of this case. On April 16, 1994, Francisco Reyes Vejarano was convicted by a jury in federal court on five counts of conspiracy to possess with intent to distribute approximately 3 kilograms of heroin from September 1992 to April 1993, under the provisions of the Controlled Substance Act, 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. §§ 2, 371 and 1542.[1] On August 30, 1994, he was sentenced, *inter alia,* to 188 months of imprisonment and five years of supervised release. He was also sentenced to pay a fine of $50,000.00.[2] The sentence was later appealed and affirmed.[3] During the pendency of his criminal case, on February 25, 1993, the Government of the United States of America ("the Government") filed a Complaint for Forfeiture *In Rem* against the alleged properties of Mr. Reyes Vejar-

---

1. *See* Docket Nos. 64 and 101, in Crim. No. 94–016(HL). He was also indicted on one count of conspiracy in another case, under the provisions of the Controlled Substance Act (he provided $10,000.00 for the purchase of cocaine "on or about October 1993"), 21 U.S.C. §§ 841(a)(1) and 846. *See* Crim. No. 94–080(RLA).

2. He was sentenced to 188 months of imprisonment as to four counts; 60 months ast to

the fifth count, to be served concurrently. He also received a fine of $10,000.00 as to each of the five counts. Finally, he was condemned to a supervised release term of five years as to each of counts one and two; four years of supervised release as to the third and fourth counts; and three years as to the fifth count. *See* Docket No. 145, Crim. No. 94–016(HL).

3. *See* Crim.App. No. 94–2072.

ano, pursuant to the provisions of the Controlled Substance Act, 21 U.S.C. §§ 881(a)(6) and (7), and the Money Laundering Act, 18 U.S.C. § 981. Accordingly, the Government obtained a preliminary order of forfeiture. The Government then summarily confiscated and seized the properties by recording a notice of *lis pendens* with the Property Registrar of the Commonwealth of Puerto Rico. Eventually, a final order of forfeiture was entered by Final Default Decree in favor of the Government. (Docket No. 143).

Soon thereafter, after having analyzed a claim filed by Older, the Government corroborated that four (4) real properties had been unduly seized and forfeited (hereinafter, "the properties").[4] As it turned out, they had been sold to Older by Mr. Reyes–Vejarano on March 22, 1989, that is, before the criminal acts for which Mr. Reyes–Vejarano was later convicted. Therefore, after thorough investigation, on March 7, 1996, the Government entered a Stipulation for Compromise Settlement to return the properties to Older. (*See* Exhibit III, Docket No. 262). Accordingly, the Government then moved the Court to issue an order vacating the Final Default Decree entered against the properties. On April 23, 1996, this Court approved, in a marginal order, the Stipulation entered.[5] Consequently, the Final Default Decree was set aside, (Docket No. 226), and title over the properties was returned to Older.

On June 25, 2001, Older entered a motion indicating that JER, a corporation specializing in tax collection, had requested the satisfaction of unpaid property taxes

corresponding to the years 1991 through 1998. Older responded by disclaiming responsibility for the taxes corresponding only to the years 1993 through 1996, alleging that during that period the Government had been the legal proprietor. Consequently, Older asked this Court to issue order prohibiting JER to collect the unpaid property taxes corresponding to the years 1993 through 1996. This Court granted Older's motion and, on July 24, 2001, ordered the cancellation of the property taxes corresponding to said years. (Docket No. 263).

JER has now filed a motion to set aside said order, stating that "[t]o allow the Order to stand will effectively impede JER, and ultimately the Commonwealth of Puerto Rico, to collect valid and undisputed tax debts in default over the Property for said period." (Docket No. 264).

According to Puerto Rican law:

> [a]ll real property shall be appraised in the Municipality in which it is located in order to levy taxes on it on behalf of the person who is **the owner o[r] is in possession** thereof by **the first of January.** In case the property is registered at the Property Registry, the [CRIM] will appraise the property on behalf of the person under whose name it is registered at the Property Registry by the date of appraisal....

21 P.R. Laws Ann., § 5068 (1995) (emphasis added).[6]

Therefore, since JER claims that there was no legal basis to support this court's determination of eliminating the proper-

---

4. These properties have been referred to in the record as "D", "E", "J" and "K". *See* Docket No. 143.

5. "With respect to property ordered forfeited ... the Attorney General is authorized to ... restore forfeited property to victims of a violation of this chapter, or take any other action

to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this chapter[.]" 18 U.S.C. § 1963(g)(1).

6. *See also Teacher's Association v. Treasurer,* 54 P.R.R. 511 (1939).

ties' unpaid tax liabilities for the fiscal years 1993–1996, the relevant inquiry in this case is **who was the owner** or possessor thereof by the first of January of those fiscal years. Nevertheless, the Court now attempts to answer that question, pursuant to the following principles of law.

## II

From the outset, it is important to note that JER's arguments raise an issue of first impression. Furthermore, it is also important to note that, albeit JER is not a party in this case, it nevertheless has standing in this case because it has been hired to collect the unpaid property taxes over the properties.

In 1997, Puerto Rico's government enacted legislation granting the Municipal Revenue Collection Center of Puerto Rico ("CRIM" for its Spanish acronym), a branch of the island's Treasury Department, the authority to sell certain transferable property tax debts. *See* Act No. 21 of June 26, 1997, 21 P.R. Laws Ann., § 5921 *et seq.* (1999). Hence, in 1998, CRIM sold approximately $323 million in outstanding transferable property taxes to the Puerto Rico Public Finance Corporation ("PRPFC"). In February 1999, PRPFC contracted JER to service a debt portfolio that included, *inter alia*, the outstanding balance corresponding to the properties. As of August 9, 2001, the total outstanding balance of taxes over the properties was $5,095.37. (Docket No. 264, p. 4).

JER claims that Puerto Rican law provides for a preferential fiscal lien over said properties. *See* art. 6 of the Act No. 21, 21 P.R. Laws Ann., § 5924 (Supp.1998). Furthermore, JER alleges that no evidence has been shown to prove the U.S. Government ever held title over said properties, because they were allegedly never "subject of illegal activity as defined under applicable law." Thus, it contends there are no

"valid grounds to cancel tax debts in default over the [properties] for those years." Accordingly, it asks that the order mandating the cancellation of unpaid taxes over the properties for the years 1993–1996, be set aside. JER is obviously mistaken.

## III

 Properties forfeited to the United States **are owned by them** as of the date of the activity which renders the property forfeitable, pursuant to the "Relation Back Doctrine" articulated in *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890) and codified at 18 U.S.C. § 981(h). As such, properties are **not subject to state and local taxes** arising after the date of the illegal activity, or in the case of properties acquired with proceeds or illegal activity, after the date such properties are acquired. *United States v. Real Property*, 837 F.Supp. 1168, 1172 (M.D.Fla.1993). The "Relation Back Doctrine" establishes that title to forfeited property vests with the United States from the date of the offense that gave rise to the forfeiture, although title is not perfected until a final order of forfeiture is entered. *Id.* In other words, "the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, *when obtained*, relates back to that time...." *Stowell*, 133 U.S. at 16–17, 10 S.Ct. at 247. Hence, the doctrine serves the purpose of establishing the priority of the United States' interest in the property at the time the underlying offense was committed and, "[i]f the government wins a judgment of forfeiture ... the vesting of its title in the property relates back to the moment when the property became forfeitable." *United States v. 92 Buena Vista Ave.*, 507 U.S.

111, 127, 113 S.Ct. 1126, 1136, 122 L.Ed.2d 469 (1993).

■ Legally, the government does not own the property seized for forfeiture until it proves its right to forfeiture, under the applicable forfeiture statute. Until that time, the government will only be a claimant to the property; otherwise, it would be unnecessary for the United States to institute a formal forfeiture proceeding. *United States v. 37.29 Pounds of Semi–Precious Stones,* 7 F.3d 480, 485 (6th Cir.1993). The government's title is simply not perfected until judicial condemnation. *United States v.1960 Bags of Coffee,* 12 U.S. (8 Cranch) 398, 410, 3 L.Ed. 602 (1814).[7] However, if the government does establish its right to forfeiture, there is no question that its ownership will relate back to the time the property became "tainted with the heinous crime. . . ." *Manufacturas International, LTDA v. Manufacturers Hanover Trust Co.,* 792 F.Supp. 180, 184 (E.D.N.Y.1992).[8] The historical foundation for this principle has not changed: "[m]odern forfeiture cases continue to reflect the legal fiction that it is the property which has committed a wrong." *Id.; see also Florida Dealers and Growers Bank v. United States,* 279 F.2d 673, 677 (5th Cir.1960) (recognizing that in a forfeiture procedure it is the property that is proceeded against and ultimately held guilty).

■ Furthermore, since the nineteenth century it has been settled that property owned by the United States is immune from taxation by state and local authorities, in the absence of express congressional authorization. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). In fact, since *M'Culloch,* the Supreme Court has consistently ruled that local taxation must be specifically authorized by Congress, and that such authorization must be clear, express and affirmative. *United States v. Allegheny County,* 322 U.S. 174, 177, 64 S.Ct. 908, 911, 88 L.Ed. 1209 (1944); *United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). This Court has not found any legal authority indicating that Congress waived such immunity when drafting the federal forfeiture statutes and JER has failed to demonstrate otherwise. Therefore, "local taxes cannot be assessed against property in which the United States maintains a title and/or possessory interest." *Real Property,* 837 F.Supp. at 1167.

## IV

In the instant case, the U.S. Marshals lawfully seized the properties on March 10, 1993. (Docket No. 143).[9] The Govern-

---

7. In procedural terms, the Government is initially permitted to seize property based on a judicial finding of probable cause to believe that the property will ultimately be proved forfeitable. *See United States v. Monsanto,* 491 U.S. 600, 615, 109 S.Ct. 2657, 2666, 105 L.Ed.2d 512 (1989). Seizure, of course, entails only taking possession and control of property, provided due process. *See* BLACK'S LAW DICTIONARY 1363 (7th ed.1999). Forfeiture, on the other hand, means title has been transferred. *Id.,* p. 661. When the Government *seizes* property, it must have probable cause to believe that it's connected to criminal activity, but legally, it will **only** be exercising direct control and possession over it. As a practical matter, the Government will then initiate a judicial process whereby it must prove the property is forfeitable (*i.e.,* a forfeiture procedure). But the government will not *own* the property seized until it proves its right to forfeiture and final condemnation is decreed. *1960 Bags of Coffee,* 12 U.S. (8 Cranch) at 410.

8. In cases such as this one, that "heinous crime" would be, of course, drug trafficking.

9. The property referred to in the record as "P" (an automobile) was also lawfully seized on that date. (Docket No. 143).

ment then filed a forfeiture procedure, which went unopposed. Accordingly, on May 26, 1994, this Court issued a Final Default Decree determining that said properties were subject to forfeiture, pursuant to the applicable statutes. (Docket No. 143). In addition, **this Court ordered the properties to be recorded with the Property Registrar of Puerto Rico in the name of the United States of America, free of all liens and encumbrances.** Therefore, title was immediately and effectively transferred to the United States of America. In other words, the Government became proprietor over the properties.

Moreover, by virtue of "legal fiction," ordained by the "Relation Back Doctrine," the Government's ownership over said properties related back to the time the property first became "tainted." *Stowell,* 133 U.S. at 16–17, 10 S.Ct. 244. In the instant case, the properties became "tainted" when Mr. Reyes Vejarano committed the acts that resulted in his conviction. The conspiracy for which he was accused and eventually convicted began in September 1992;[10] henceforth, the precise date to which the Government's title over the properties related back to. *Manufacturas International, LTDA,* 792 F.Supp. at 184. Older, thus, ceased to be proprietor over the properties, and the U.S. Government was legally considered to be holding title by the first of January of 1993, pursuant to the Relation Back Doctrine. Nevertheless, title over the properties was again vested in Older **after** January 1, 1996, pursuant to the Stipulation entered by the Government and Older, which was approved by this Court on April 23, 1996. (Docket No. 226).

JER's arguments seem to assume that, once title over the properties was returned, then somehow the law made Older proprietor **retroactively** for the fiscal

years 1993–1996, and, therefore, liable for the unpaid taxes corresponding to those years. Furthermore, it contends this Court had no legal basis to order the cancellation of taxes over the properties. Again, JER has misread the law.

Article 3.18 of Act No. 83 of August 30, 1991 **clearly states** that the CRIM is "**authorized to cancel any real estate tax receipt should … a condemnation** under the sovereign right of eminent domain has been executed **by the … Government of the United States of America** and its instrumentalities, after the first day of January and before the first day of July of any year." 21 P.R. LAWS ANN., § 5068 (1995) (emphasis added). In view of the undisputable fact that a final order of condemnation was entered by Final Default Decree in favor of the Government of the United States of America, after an unopposed forfeiture procedure (*see* Docket No. 143), it follows that the CRIM was authorized by law to cancel the real estate tax receipt over the properties for the fiscal years 1993–1996.

 In the instant case, the properties herein concerned were owned and held by the United States, from fiscal years 1993 through 1996. Although this **is a first impression matter,** the Court believes that subsequent events, such as the return of said properties for whatever reason, simply cannot change the fact that the U.S. was owner during those years. Furthermore, 21 P.R. LAWS ANN., § 5151(a) specifically mandates the exemption from all personal and property taxes of property belonging to the United States. But more importantly, § 5068 authorizes the cancellation of the receipts imposed on the properties and expressly prohibits CRIM from issuing new receipts: "Should the agency of public corporation be exempt from the

10. *See* "Superseding Indictment," Docket No. 64, Crim. Case No. 94–016(HL).

levy and payment of taxes, **no receipt whatsoever will be issued.**" 21 P.R. LAWS ANN., § 5068 (emphasis added).

## V

It is clear that the Government of the United States of America—which is exempt from local taxation—was the sole proprietor from fiscal year 1993 until fiscal year 1996. It follows then that JER cannot collect taxes from Older for outstanding property taxes corresponding to fiscal years 1993 through 1996, pursuant to the relation back doctrine and 21 P.R. LAWS ANN., § 5068 (1995).

**WHEREFORE,** JER's Motion to Set Aside Order is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this __ day of _____ of 2001.