BESOSA, District Judge.
On October 12, 2018, the Court issued a preliminary forfeiture order pursuant to 21 U.S.C. section 853(n) (" section 853") and Federal Rule of Criminal Procedure 32.2 (" Rule 32.2"). (Docket No. 24.) Third-party petitioners Doctor's Associates, LLC ("Doctor's Associates") and Subway Realty, LLC ("Subway Realty") (collectively "Subway") move for relief from forfeiture. (Docket No. 34.) For the reasons set forth below, Subway's motion for relief from forfeiture is DENIED .
I. Background
On July 3, 2018, a grand jury charged defendant Felix Peña-Hernández ("Peña") with committing bank fraud in violation of 18 U.S.C. section 1344(2) (counts one through thirteen), and money laundering in violation of 18 U.S.C. section 1957 (counts fourteen through eighteen). (Docket No. 3.) The indictment provided that "[u]pon conviction of one or more" bank fraud or money laundering offenses, Peña shall forfeit the following property:
*132 a. $ 5,036,960.00;
b. All rights, title, interest in any Franchise Agreement and Sublease Agreement, and ongoing business assets for Subway Franchise Number 18256 and the Subway premises located at Plaza Río Hondo, Avenida Comerío Esquina Expreso de Diego, in Bayamón, Puerto Rico ["Bayamón Subway"];
c. All rights, title, interest in any Franchise Agreement and Sublease Agreement, and ongoing business assets for Subway Franchise Number 21043 and the Subway premises located at Urb. San Agustín, 1174 Máximo Alomar Street, San Juan, Puerto Rico ["San Juan Subway"].
(Docket No. 3 at pp. 7-8.)
The United States and Peña entered into a plea agreement, setting forth sentencing recommendations and a forfeiture provision. (Docket No. 14.) This provision mirrors the forfeiture allegation in the indictment, with the exception that the plea agreement refers only to the Subway properties, not the $ 5,036,960.00. Id.
On August 24, 2018, Peña pled guilty to thirteen counts of bank fraud. (Docket No. 13.)[1] Subsequently, the United States moved for a preliminary forfeiture order. (Docket No. 20 at p. 1; Docket No. 21.) The Court authorized the United States to seize both Subway premises and enjoined Peña from selling, transferring or taking "any other action ... that would reduce the value of the assets." (Docket Nos. 22 & 24; Docket No. 23 at p. 2.)
Doctor's Associates and Subway Realty requested relief from forfeiture on November 28, 2018. (Docket No. 34.) Doctors Associates "operates and franchises to others to operate sandwich shops under the trade name and service mark Subway®." Id. at p. 2. Subway Realty rented locations for the Bayamón Subway and the San Juan Subway restaurants. Id. at pp. 5-11. Peña entered into sublease and franchise agreements with Subway Realty and Doctor's Associates, respectively. Id. Subway argues that "[Doctor's Associates and Subway Realty's] superior rights and interests in the subject properties [are] exempt from forfeiture." Id. at p. 34. The United States opposed Subway's motion. (Docket No. 68.)
II. Criminal Forfeiture
Because Peña committed bank fraud in violation of 18 U.S.C. section 1344, the Court "shall order that [he] forfeit to the United States any property constituting, or derived from, proceeds [he] obtained directly or indirectly, as the result of [the offense]." 18 U.S.C. § 983(a)(2)(B). Criminal forfeiture is an in personam sanction "intended to directly punish persons convicted of [an] offense by forcing them to forfeit the proceeds obtained as a result of that offense." United States v. Kingsley, 851 F.2d 16, 18 n.2 (1st Cir. 1988) ; see United States v. Saccoccia, 58 F.3d 754, 783 (1st Cir. 1995) (noting that criminal forfeiture "traditionally operated as an incident to a felony conviction in personam against a convicted defendant, requiring him to forfeit his property to the crown.").
The "relation back doctrine" in section 853 provides that "[a]ll rights, title, and interest in property [subject to forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). Section 853 permits *133 the United States to step into Peña's shoes, "acquiring only the rights [he possessed] at the time of the criminal acts, and nothing more." United States v. Huntington Nat'l Bank, 682 F.3d 429, 433 (6th Cir. 2012).
A. Ancillary Proceedings
Rule 32.2 requires that the preliminary forfeiture order issue "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A). A preliminary forfeiture order becomes final at sentencing. Fed. R. Crim. P. 32.2(b)(4). Third-party petitioners, however, may request an ancillary "hearing to adjudicate the validity of [their] interest in the property." 21 U.S.C. § 853(n)(2) ; see Fed. R. Crim. P. 32.2(c) ("If, as prescribed by statue, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding."). Indeed, ancillary proceedings are the exclusive recourse for third-party petitioners to challenge the United States' seizure of specific property. See United States v. Mar. Life Caribbean, Ltd., 913 F.3d 1027, 1035 (11th Cir. 2019) ("As we have explained, an ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property.") (internal citation and quotation omitted).
Third-party petitioners must assert a "legal interest" in the disputed property. 21 U.S.C. § 853(n)(2). Property subject to forfeiture encompasses real property, tangible and intangible personal property, rights, privileges, interests, claims and securities. 21 U.S.C. § 853(b) ; see United States v. Monsanto, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where [ section 853 ] applied, or broader words to define the scope of what was to be forfeited."). Property interests are defined by state law. United States v. White, 675 F.3d 1073, 1078 (11th Cir. 2012) ("Because a legal interest is required to bring a claim under [ section 853 ], a court must first look to the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest."). Accordingly, Puerto Rico law determines whether the forfeited property constitutes a cognizable "legal interest" within the meaning of section 853. See United States v. One Rural Lot Identified as Finca No. 5991 in Barrio Pueblo, 726 F.Supp.2d 61 (D.P.R. 2010) (Fusté, J.) (applying Puerto Rico law to determine that an unrecorded lease qualified as a legal interest pursuant to section 853 ).
Section 853 requires that third-party petitioners establish "superior" interests in the forfeited property, or that they possess a "separate and distinct legal right to the property that is vested in [them] and [them] alone." Id.; United States v. Espada, 128 F.Supp.3d 555, 561-62 (E.D.N.Y. 2015).[2] The Court shall amend the preliminary forfeiture order if:
the petitioner has a legal right, title, or interest in the property, and such right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of [the offense].
21 U.S.C. § 853(n) ; compare United States v. McCollum, 443 F.Supp.2d 1154, 1168 (D. Neb. 2006) (ordering the United States to return forfeited property because "Mrs.
*134 McCollum owned the gun collection outright (or at least held a superior legal interest to it) as a result of Nebraska's intestacy laws"), with United States v. Carmichael, 419 F.Supp.2d 1376, 1379 (M.D. Ala. 2006) ("Because R & H had no vested or superior title in the Carmichael Center at the time the acts giving rise to forfeiture of the property began, R & H cannot meet its burden under 21 U.S.C. § 853(n).").
III. The United States is Entitled to Forfeit the Rights, Title, and Interests Possessed by Peña at the Time He Committed Bank Fraud
The rights, title, and interests possessed by Peña at the time he committed bank fraud are subject to forfeiture. Peña committed bank fraud from November 2011 to June 2015. (Docket No. 14 at p. 12.) Accordingly, the United States' interests in Peña's property vested at the latest in 2014 when Peña purchased the San Juan Subway's and Bayamón Subway's "ongoing business assets," goodwill and tangible personal property, and in 2015, when the Subway sublease was assigned to Peña, and when Subway entered into franchise agreements to operate the Bayamón Subway and the San Juan Subway restaurants. See, e.g., United States v. Watts, 786 F.3d 152, 167 (2d Cir. 2015) (holding that "all proceeds of Dupree's criminal conspiracy automatically vested in the government" at the "start of Dupree's conspiracy in 2007" pursuant to section 853 ); United States v. McCorkle, 143 F.Supp.2d 1311, 1329 (M.D. Fla. 2001) ("All right, title, and interest in the fraud proceeds laundered by the [defendants] vested in the United States when the [defendants] first committed the crimes giving rise to the forfeiture."). The property subject to forfeiture falls within two categories: franchise rights and business assets.
A. Property Subject to Forfeiture
To acquire the property subject to forfeiture, Peña entered into two separate but related agreements. First, Peña subleased locations for the restaurants. Second, Peña and Subway entered into franchise agrements.
1. The Sublease Agreements
Subway Realty (formerly Subway Real Estate Corp.) leased the San Juan and Bayamón Subway properties in 1995 and 1998, respectively. (Docket No. 34, Exs. 7 & 12.) Subsequently, Joan McHale ("McHale") and Lyle Swanson ("Swanson") subleased the properties from Subway Realty. (Docket No. 34. Exs. 8 & 13.)[3] McHale and Swanson operated the Subway restaurants for approximately twenty years. In 2015, McHale and Swanson assigned the Subway sublease agreements to Peña. (Docket No. 34, Exs. 10, 15-16.)
The sublease agreements require the franchisee to "make all rental payments directly to the Landlord." (Docket No. 34, Ex. 8 at p. 2, Ex. 13 at p. 3.) Subway Realty reserved the right to terminate the lease for failure to pay rent. Id. As of November 6, 2018, Peña owed $ 15,287.73 in rent for the San Juan Subway restaurant. (Docket No. 34, Ex. 6.) As of November 8, 2018, Peña owed $ 10,080.38 in rent for the Bayamón Subway restaurant. (Docket No. 34, Ex. 5.)
2. The Franchise Agreements
Subway entered into franchise agreements with Peña to operate the Bayamón Subway and the San Juan Subway restaurants on April 20, 2015 and August 15, *135 2015, respectively. (Docket No. 34, Exs. 3 & 4.) The franchise agreements are substantively identical. Id. Subway owns a "proprietary system for establishing and operating restaurants featuring sandwiches, pizza and salads" (hereinafter, "the system") (Docket No. 34, Ex. 3 at p. 3.) Subway granted Peña access to the system in exchange for "eight percent (8%) of the gross sales from the Restaurant." Id. at pp. 3-4. Peña assumed costs associated with "permits, equipment, furniture, fixtures, signs, advertising, insurance, food products, labor, utilities, rent, fees, customs, stamp duty, other duties, governmental registrations Sales Tax and other taxes." Id. at p. 5.
The franchise agreements designated Peña as an "independent franchise operator," precluding him from assigning "the profits and losses of the Restaurant directly or indirectly with any individual who is not named as a franchisee on [the] Agreement." (Docket No. 34, Ex. 3 at p. 7-8.) Subway reserved the right to terminate the franchise agreements in the event of default on the sublease, or failure to comply with civil and criminal laws. Id. at p. 9. Termination of the franchise agreement results in the complete revocation of Peña's rights to the Subway restaurants. Id.
B. Business Assets
Proceeds obtained by committing bank fraud also permitted Peña to purchase business assets. See United States v. Joon Park, 825 F.Supp.2d 644, 648 (D. Md. 2011) ("If a business is subject to forfeiture or restraint, then so are all of the assets of the business, including any funds in any account at a financial institution.") (citation omitted). On November 12, 2014, Peña purchased McHale and Swanson's "rights, title and interest" in the San Juan Subway, "ongoing business assets," goodwill, and "all items of tangible personal property consisting of all furniture, fixtures, inventory, equipment, and machinery listed in Exhibit A" for $ 458,000.00. (Docket No. 68, Ex. 2 at pp. 1-2.) Four months later, Peña purchased Swanson's "rights, title and interest" in the Bayamón Subway, "ongoing business assets," goodwill, and "all items of tangible personal property consisting of all furniture, fixtures, inventory, equipment, and machinery listed in Exhibit A" for $ 420,000.00. (Docket No. 68, Ex. 3 at pp. 1-2.)[4]
IV. Subway's Motion for Relief from Forfeiture
Section 853 compels the Court to forfeit Peña's interests arising from the Subway franchise agreements. These interests vested in the United States at the latest in 2014 and 2015, when Peña committed bank fraud and he purchased both Subway restaurants' business assets, goodwill, and tangible personal property in 2014, and when he became the assignee of the Subway sublease and he entered into the franchise agreements in 2015. Docket No. 14 at p. 12; see e.g., United States v. Catalá, 870 F.3d 6, 11 (1st Cir. 2017) (holding that "the government's interest in the forfeited cash vested as soon as the defendant began selling drugs and before any proceeds started to reach him" pursuant to section 853 ); United States v. A Group of Islands Known as Cayos de Barca, 185 F.Supp.2d 117, 120 (D.P.R. 2001) (Domínguez, J.) ("The conspiracy for which [the defendant] was accused and eventually convicted began in September 1992; henceforth, the precise date to which the Government's *136 title over the properties related back to."). The Court recognizes that the rights, title and interests reserved by Subway in the franchise agreements remain the property of Subway. The Final Forfeiture Order pertains solely to Peña's rights, title and interests pursuant to his agreements with Subway, McHale and Swanson.[5]
The United States "is not interested in operating Subway restaurant locations in Puerto Rico." (Docket No. 81 at p. 3.) Instead, it seeks to "ensure that Defendant Felix Peña-Fernández does not retain the right to operate the Subway franchises in question," a permissive and appropriate objective pursuant to criminal forfeiture law. See United States v. O'Connor, 321 F.Supp.2d 722, 729 (E.D. Va. 2004) ("[F]orfeiture generally serves to remove from an offender the fruits and instrumentalities of his crime, and thereby provides a powerful disincentive to commit the crime in the first instance.").
Subway argues that "its legal rights and interests ... were superior to those of defendant, Mr. Peña-Fernández, at the time of the commission of the acts that gave rise to the forfeiture." (Docket No. 34 at p. 9.) Subway conflates, however, its property with the rights conferred to Peña pursuant to the franchise agreements. Subway allowed Peña to access its proprietary "system" to prepare and sell sandwiches. See Docket No. 34, Ex. 3 at p. 3, Franchise Agreement ("[Peña] want[s] access to the System to establish and operate the Restaurant."). The franchise agreements did not transfer ownership of Subway's property rights to Peña. Because the property subject to forfeiture and Subway's property are distinct, amendment of the preliminary forfeiture order is unwarranted.
V. Conclusion
For the reasons set forth above, Subway's motion for relief from forfeiture is DENIED . (Docket No. 34.)
IT IS SO ORDERED.

The United States agreed to dismiss the money laundering counts after sentencing. (Docket No. 14 at p. 6.) The sentencing hearing is scheduled for June 12, 2019. (Docket No. 75.)

Bona fide purchasers also qualify for relief from forfeiture. 21 U.S.C. § 853(n)(6)(b). Subway does not claim to be bona fide purchasers.

McHale is not a signatory on the San Juan Subway sublease agreement. (Docket No. 34, Exs. 11 and 13.)

The United States did not attach Exhibit A to the asset purchase agreements. (Docket No. 68, Exs. 2 & 3.)

Subway is "not requesting relief from forfeiture regarding the ongoing business assets of the Subway stores." (Docket No. 80 at p. 2.) Accordingly, the United States may forfeit the tangible business assets Peña acquired from McHale and Swanson, property purchased with $ 878,000.00 in fraudulent funds.